**In re Kenneth E. FROST and Carolyn Frost, Debtors.**

**Bankruptcy No. 94 B 45265(JHG).**

United States Bankruptcy Court, S.D. New York.

· Nov. 5, 1997.

Leo Fox by Leo Fox and Helene C. Bergerbest, New York, NY, for Matthew C. Harrison, Jr., Permanent Chapter 7 Trustee.

Law Offices of Ian J. Gazes by Ian J. Gazes, New York, NY, for Ian J. Gazes Interim Chapter 7 Trustee.

## DECISION ON INTERIM AND PERMANENT TRUSTEES' REQUESTS FOR PAYMENT OF COMMISSIONS

JEFFRY GALLET, Bankruptcy Judge.

Before me are the fee applications of Ian J Gazes, the Interim Chapter 7 Trustee, and Matthew C. Harrison, Jr., the elected Permanent Chapter 7 Trustee. The two trustees agree on the total commissions to be paid. They disagree as to which commissions should be calculated at the higher of the rates provided in 11 U.S.C. § 326.

### FACTS

On November 14, 1994, Kenneth E. Frost and Carolyn Frost ("the Debtors") filed a voluntary joint Chapter 11 petition under the Bankruptcy Code ("the Code"). On September 21, 1995, the case was converted to a Chapter 7 case under the Code. On or about September 21, 1995, the United States Trustee appointed Ian J. Gazes as Interim Trustee of the Debtors' estates. After that, on November 30, 1995, Matthew C. Harrison, Jr. was elected Permanent Chapter 7 Trustee pursuant to § 702 of the Code and Bankruptcy Rule 2003.

On March 26, 1997, the Permanent Trustee and the Interim Trustee each moved before me for payment of commissions pursuant to §§ 326 and 330 of the Code. From the conversion date through March 26, 1997, $2,956,352.04 had been collected by the two trustees. At the March 26, 1997 hearing, the Interim Trustee requested compensation of $4,647.97, based upon his collection of certain gas and oil revenues and the turnover of these receipts, in the amount of $38,979.71, to the Permanent Trustee. The Permanent Trustee requested compensation in the amount of $110,769.82, based on receipts in the amount of $2,917,327.33. The Interim Trustee and the Permanent Trustee each

argue that his compensation should be based upon the higher commission schedule set forth in § 326(a) of the Code.

### THE LAW

■ Under § 330 of the Code, after notice to all parties in interest and a hearing, a court may award a trustee, an examiner, and a professional retained pursuant to §§ 327 and 1103:

.(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

In making an award of compensation to trustees, "the court must consider the factors set forth in Section 330(a)(3) and (4), including the results obtained, time expended by the trustee, return to the estate, intricacies of the problems involved, and opposition involved." 3 *Collier on Bankruptcy* ¶ 330.03[1] (15th ed.1996) (citations omitted).

■ The requirements of reasonableness set forth in § 330 are subject to the limitations of § 326. *See In re Financial Corp. of America*, 114 B.R. 221, 223–24 (9th Cir. BAP 1990). Under § 326 of the Code,

the court may allow reasonable compensation ... for the trustee's services ... not to exceed 25 percent of the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation to not exceed 3 percent of such moneys in excess of $1,000,000, upon all monies disbursed or turned over ... by the trustee to the parties in interest....

The sliding scale in § 326(a) sets forth the maximum compensation chapter 7 may receive. 3 *Collier on Bankruptcy* ¶ 326.02[2] (15th ed.1996). The actual compensation allowed is subject to the court's discretion. *See In re Travel Headquarters, Inc.*, 140 B.R. 260, 262 (9th Cir. BAP 1992) ("The court, in its own discretion, may determine whether a trustee's fees are reasonable, actual and necessary") (citations omitted).

■ Where there is more than one trustee in a single case, § 326(c) mandates that "the aggregate compensation of such persons for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b)...." 11 U.S.C. § 326(c). The legislative history behind § 326(c) explains that the maximum fee allowable to trustees does not change even if two trustees serve in a single case. 3 *Collier on Bankruptcy* ¶ 326.03 (15th ed.1996) (citing H.R.Rep. No. 95–595, at 327 (1977) reprinted in 1978 U.S.C.C.A.N. 5963, 6283–84; S.Rep. No. 95–989, at 38 (1978) reprinted in 1978 U.S.C.C.A.N. 5787, 5824). See also *Financial Corp.*, 114 B.R. at 224 (citing In re Yale Mining Corp., 59 B.R. 302, 305 (Bankr. W.D.Va.1986)). Turnovers made to a successor trustee are included in the amount used to calculate the § 326(a) ceiling. *Financial Corp.*, 114 B.R. at 226. See In re Bank of New England Corp., 134 B.R. 450, 465 (Bankr.D.Mass.1991), aff'd, 142 B.R. 584 (D.Mass.1992).

■ Because the compensation of trustees serving in chapter 7 cases is contingent on the total disbursements made or the payments pursuant to a plan, it can be argued that an interim trustee cannot be fully compensated until a case is closed. 3 *Collier on Bankruptcy* ¶ 326.03[1][a] (15th ed.1996). However, courts have concluded that withholding compensation to an interim trustee until a case is closed may adversely effect the willingness of interim trustees to serve in the initial stages of bankruptcy cases. *In re Fabric Stylesetters*, 8 B.R. 872, 874–75 (Bankr.S.D.N.Y.1981). In addition, interim compensation is contemplated by § 331 of the Code. *Bank of New England*, 134 B.R. at 465 (citing In re Stoecker, 125 B.R. 767 (Bankr.N.D.Ill.1991)). *See 3 Collier on Bankruptcy* ¶ 326.03[2][a] (15th ed. 1996) ("Section 331 specifically authorizes interim payments of compensation to the trustee"). Thus, at the end of the interim trustee's tenure, compensation is determined by reference to § 326.

## DISCUSSION

■ At the outset, I note that neither party has cited to a controlling precedent nor have I found one. A plain reading of the statute and its legislative history[1] does not reveal how Congress intended apply the sliding scale of § 326(c) to successive chapter 7 trustees. I must also note that this has been a difficult case for both trustees.

The Interim Trustee asserts that he is entitled to the higher commission schedule based on the plain meaning of the word "first" in 326(c) because he disbursed the first $5,000. He also argues that even under a more liberal reading of § 326, the Permanent Trustee should not be entitled to commissions realized from the disbursement of the first $5,000 because these commissions are solely the result of his work before the election of the Permanent Trustee. In support of this position, the Interim Trustee asserts that §§ 326(c) and 330 should not be read in a vacuum, but rather courts have read these two sections in conjunction when determining the compensation of a trustee.

On the other hand, the Permanent Trustee argues that a literal reading of the word "first" in § 326(c) would provide a substantial disincentive for otherwise qualified persons to serve as elected trustees and would therefore undermine the right of creditors to identify and elect qualified permanent trustees pursuant to § 702 where the interim trustee would usually be entitled to calculate commissions using the higher percentages because the interim trustee will usually be in office when the "first" monies were collected and disbursed. This is especially so if the election of a permanent trustee is delayed for a substantial period. The Permanent Trustee asserts that there is no authority to support the position that the section was designed to benefit the interim trustee, who would most likely collect the first monies.

In addition, the Permanent Trustee argues that a plain meaning of the word "first" in the statute shows that the term was used to describe the method of calculating "reasonable compensation," as opposed to a description of the timing of the collections or disbursements. If Congress used the word "first" to refer to the timing of collections or disbursements, the Permanent Trustee argues that the rest of the language would include similar descriptions such as "10% on the next $45,000."

Furthermore, the Permanent Trustee asserts that if Congress had intended trustees' commissions to be based purely on the schedule set forth in § 326(c), it would not have included any reference to the services provided by the trustee in the particular case. The Permanent Trustee argues that Congress intentionally remained silent on the issue of how "reasonable compensation" was to be calculated between interim and permanent trustees, leaving the calculation to the discretion of the court.

The Permanent Trustee asserts that the standard to be used in determining the calculation of commissions as between an interim trustee and a permanent trustee is one of equity. In support of his argument, the Permanent Trustee avers that the Interim Trustee's collections and disbursements were almost entirely the result of funds turned over by the Debtors and operating income sent to him by various oil and gas operators. The Permanent Trustee argues that he has expended considerable efforts to secure and liquidate the assets of the estate, encountering numerous controversies and impediments along the way.

While I agree with the Permanent Trustee's assertion that my determination of both his and the Interim Trustee's commissions under §§ 330 and 326(c) should be based on equity, this argument persuades me to find in favor of applying the higher percentage to the Interim Trustee's request for commissions. Interim trustees are appointed in the

---

**1.** The legislative history behind § 326(c) is derived form former Section 48(d) of the Bankruptcy Act. 3 *Collier on Bankruptcy* ¶ 326.03 (15th ed.1996). Under the Bankruptcy Act, it was not uncommon for both a receiver and a trustee to receive the maximum compensation based on the same assets. *Id.* Section 326(c) "eliminates this 'double dipping' problem" because "[t]he service of an interim trustee terminates when a trustee is elected and qualifies." *Id.* [1] (*citing* §§ 701 and 702 of the Code). *See also In re Financial Corp. of America*, 114 B.R. 221, 224–25 (9th Cir. BAP 1990). In this case there is no "double dipping" problem.

crucial, beginning stages of a bankruptcy case. They often have to take extraordinary measures in an effort to quickly evaluate their estate and begin marshaling assets. Usually, when assuming office, the interim trustee does not know the value of the estate. In contrast, an elected trustee is usually armed with considerable knowledge about the value of a particular estate. As here, an elected chapter 7 trustee has the opportunity to estimate the time, effort and skill that will be involved in liquidating the estate and the potential remuneration.[2] With this knowledge, elected trustees can make a more informed choice whether or not to serve. Therefore, without a controlling precedent or other guidance concerning the application of the sliding scale in § 326(c) to interim and permanent trustees' requests for commissions, based on the facts in this case, equity leads me to apply the higher percentage to the Interim Trustee's request for commissions.

The Permanent Trustee's reliance on *In re Fabric Stylesetters, Inc.,* 8 B.R. 872 (Bankr. S.D.N.Y.1981) is misplaced. In that case, where an elected trustee replaced an interim trustee after three months, the court granted the interim trustee one-half of his request for commissions with leave to again request compensation at the close of the case. There, the court's decision to grant the interim trustee only 50% of his request for compensation with leave to renew the remainder of his request at the close of the case was aimed at protecting the "full reach of compensation to all the property of the estate and the application of the schedules of Section 326(a) to such property." *Id.* at 874.[3] The court in *Fabric Stylesetters* did not determine whether the higher percentage in § 326(c) should be applied to an interim trustee's commission or an elected trustee's.

■ The Interim Trustee also argues that he should be entitled to partial compensation for disbursements that occurred after his service, which resulted from his work. Specifically, he asserts that he spent considera-

ble time determining whether to assume or reject various complex oil and gas leases and preparing the necessary motions. He claims that the oil and gas leases continue to generate income for the estate, on which later disbursements were made by the Permanent Trustee.

Likewise, the Interim Trustee argues that he spent considerable time evaluating claims and attending hearings related to various pieces of artwork. Thus, the Interim Trustee asserts that he should also receive part of the commissions the Permanent Trustee will realize because of the disbursements from the sales of the artwork.

For the same reasons I applied the higher percentage to the Interim Trustee's request for commissions, I find this argument unpersuasive. It is true that an interim trustee's work in the beginning of a case is crucial and affects the case from start to close. Usually, an interim trustee's efforts have an effect on an estate after the appointment has ended. However, in this case, one of the factors I considered in denying the Interim Trustee's request for commissions on distributions made after his appointment ended is that allowing an interim trustee to receive part of an elected trustee's commissions would only serve as a disincentive for otherwise qualified elected trustees to step in and continue liquidating an estate. Therefore, I find that in this case, where the Interim Trustee's appointment ended upon the election of the Permanent Trustee, so did his right to receive commissions. *See* 11 U.S.C. § 701(b); *In re Killian Construction Co., Inc.,* 24 B.R. 848, 849 (Bankr.D.Idaho 1982) (*citing* 4 *Collier on Bankruptcy* ¶ 701.01 (15th ed. 1996)) ("The appointment of the interim trustee 'is designed to protect the assets of the estate and ensure continuity of administration of the estate before the qualification of the regularly elected or designated trustee' ").

The Interim Trustee's argument that his right to commissions should not only be contingent on actual disbursements but should

---

**2.** Indeed, an interim trustee takes the assignment from the United States Trustee without knowing if it will ever pay sufficient commissions to compensate for the immediate work required.

**3.** I note, for example, that bankruptcy courts frequently withhold payment of part of an award of compensation until the close of a case.

be based on the reasonable value of his services that continue to benefit the estate is unpersuasive here. I have already considered the reasonable value of his services under § 330 in awarding him his full request for commissions. Section 326(a) only sets a ceiling on the compensation to trustees. I retain my discretion under § 330 to award an amount less than the maximum amount allowable. *In re Financial Corp. of America*, 114 B.R. 221, 224 (9th Cir. BAP 1990). The Interim Trustee's efforts in marshaling assets in the beginning of this estate do not go unnoticed. Besides disbursing monies, interim trustees are required to attend hearings, prepare motions and examine potential valuable leases and assets. However, part of the unique function of an elected trustee is to pick up where the interim trustee left off. This is not an easy task and is a consideration in valuing the permanent trustee's services to the estate.

■ Finally, the Interim Trustee requests an award for fees of $2,417.35 for the preparation of his memorandum of law in connection with this decision. "[A]ttorney's fees are generally not recoverable 'absent explicit congressional authorization.'" *Key Tronic Corp. v. United States*, 511 U.S. 809, 814, 114 S.Ct. 1960, 1965, 128 L.Ed.2d 797 (1994) (*quoting Runyon v. McCrary*, 427 U.S. 160, 185, 96 S.Ct. 2586, 2602, 49 L.Ed.2d 415 (1976)). *See In re Harvard Knitwear, Inc.*, 193 B.R. 389, 399 (Bankr.E.D.N.Y.1996) (*citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)) ("[u]nder the traditional American rule, attorney's fees are not ordinarily recoverable by a prevailing party in federal litigation without statutory authorization"). The Interim Trustee has not shown a reason for departing from the general American rule

governing the allocation of costs of litigation. I see no reason to burden the estate for fees for services that do not benefit the estate.[4] Therefore, the Interim Trustee's request for attorney's fees is denied.[5]

The parties are directed to settle an order for fees consistent with this decision.

---

4. *In re JLM, Inc.*, 210 B.R. 19, 24 (2d Cir. BAP 1997) (*citing In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 71–72 (2d Cir.1996)) ("Fees should be awarded for services that were beneficial at the time rendered and ... reasonably likely to benefit the debtor's estate").

5. The Permanent Trustee was represent by his counsel, who also represents him in his capacity as trustee. That lawyer's fees were not accrued for the benefit of the estate and are the Permanent Trustees own responsibility. *See In re JLM,*

*Inc.*, 210 B.R. 19, 24 (2d Cir. BAP 1997) (*citing In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 71–72 (2d Cir.1996)). *See also duPont v. Southern Nat'l Bank*, 575 F.Supp. 849, 864 (S.D.Tex.1983), *aff'd in part, vacated in part*, 771 F.2d 874 (5th Cir. 1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986) (legal fees paid to counsel "whose efforts are principally directed towards protecting the trustee from an expense which does not benefit the trust ... must be paid by the trustee, without reimbursement from the trust estate").