### In re Gerald McKINNEY, Debtor.

### No. 06–30314 TEC.

United States Bankruptcy Court,
N.D. California.

Feb. 29, 2008.

---

James F. Beiden, Law Offices of James F. Beiden, Burlingame, CA, Steven L. Jacobs, Law Offices of Steven L. Jacobs, San Leandro, CA, for Debtor.

Aron M. Oliner, Law Offices of Duane Morris, Ernst A. Halperin, Thomas F. Koegel, Folger, Levin and Kahn, E. Lynn Schoenmann, San Francisco, CA, for Trustee E. Lynn Schoenmann.

Edward G. Myrtle, Office of the U.S. Trustee, San Francisco, CA, for U.S. Trustee.

## *OPINION*

THOMAS E. CARLSON, Bankruptcy Judge.

Chapter 7 trustee contends that she is entitled to the maximum compensation permitted under section 326(a). I determine that although section 330(a)(7) creates a presumption that the statutory maximum constitutes reasonable compensation, that presumption is rebutted in the present case because the statutory maximum is substantially disproportionate to the value of the services Trustee was required to perform.

1. *See* Guidelines for Compensation and Ex-

## FACTS

Debtor filed a chapter 13 case on April 28, 2006. He had become delinquent on his house payments and the lender had commenced foreclosure. Debtor hoped to save the equity in the house by using the automatic stay to obtain enough time to find a buyer. When Debtor failed to appear at a hearing in the chapter 13 case, however, the court converted the case to one under chapter 7. Debtor, believing the case had been dismissed, continued his efforts to sell the house. Without hiring a broker, obtaining approval of the court, or contacting the chapter 7 trustee, Debtor signed a sale contract to sell the house for $765,000. The Trustee learned about this sale before it closed and contacted a broker, who advised Trustee that the sale price was reasonable. Trustee then had her counsel obtain an order authorizing the sale, and closed the sale on behalf of the estate, receiving net proceeds of $210,636 after all liens were paid.

Following the sale of the house, Trustee and her professionals submitted a proposed distribution and fee applications. Trustee sought compensation in the amount of $35,891, the maximum permitted under section 326(a). Her counsel sought compensation in the amount of $20,556. Trustee's accountant sought compensation in the amount of $3,432. Allowed unsecured and priority claims, other than professional fees, total $34,990.

Debtor, who will receive the surplus after all claims are paid, objected to the fees sought by Trustee. Debtor first argued that Trustee should receive no fees because she did not comply with the court's Fee Guidelines, which require all trustees to submit time records and a narrative statement of all fee applications exceeding $15,000.[1] Debtor also argued that the fees

pense Reimbursement of Professionals and

are excessive in light of the limited services required of the trustee in this case. Debtor noted that Trustee's counsel sought fees of $11,024 for investigating the sale Debtor had arranged and for obtaining retroactive approval for that sale.[2]

Trustee responded to the objection to her fee application by asserting that under the statutory amendments that went into effect in October 2005, she was entitled to the statutory maximum fee, and that she was not required to submit time records to the court. This court rejected the Trustee's position, and ordered her to file time records and a narrative statement. *In re McKinney,* 374 B.R. 726, 730–32 (Bankr. N.D.Cal.2007).

Trustee filed a narrative statement that describes Trustee's work in evaluating and closing the sale of the residence, Trustee's objection to the Debtor's homestead exemption, Trustee's handling of Debtor's domestic support obligation, and Trustee's claimed entitlement to the maximum commission to make up for uncompensated work in no-asset cases.

Trustee submitted contemporaneous time records for 19.4 hours of work, which indicate that she spent 7.6 hours on general administration, 4.1 hours on the sale of Debtor's residence, 1.8 hours on the homestead exemption, 1.2 hours on the support obligation, and 4.7 hours reviewing claims. Trustee estimated that she also spent 3.75 hours reconciling bank statements, 3 hours on the domestic support claim, 3 hours talking with the United States Trustee about her fee application, and 30 hours responding to Debtor's objection to her fee application.

Debtor objected to the revised fee application, once again contending that the fees sought were disproportionate to the work required, and contending that the court should consider only those hours Trustee recorded contemporaneously.

## DISCUSSION

A. Trustee's Commission Must be Reasonable

 Section 326(a) sets the maximum compensation that a trustee may receive. That statutory cap on trustee compensation is calculated from the funds distributed to creditors. In this case the statutory cap is $35,891. Section 330 states that the court is to award a trustee reasonable compensation and may award less than the amount requested by the trustee. § 330(a)(1), (2). Section 330(a)(7) states "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326."

 This court and others have held that these statutes read together provide that a trustee is not automatically entitled to the statutory cap, that the court may require a trustee to submit time records, and that the court may consider time records and other relevant factors as well as the statutory cap in determining a reasonable commission. *McKinney, supra,* 374 B.R. at 730–32; *In re Ward,* 366 B.R. 470, 476 (Bankr.W.D.Pa.2007); *In re Clemens,* 349 B.R. 725, 732–33 (Bankr.D.Utah 2006); cf. *In re Mack Properties, Inc.,* 381 B.R. 793, 799-800 (Bankr.M.D.Fla.2007) (court may award less than statutory maximum but will not require time records).

B. The Standard for Determining a Reasonable Commission

The question before the court now is how to determine what amount constitutes

Trustee, Bankr.N.D. Cal. at 7. The promulgation of guidelines is authorized by Bankruptcy Local Rule 9029–1.

2. The court approved the fees sought by Trustee's counsel by an order entered on June 22, 2007.

a reasonable commission. The *Clemens* decision states "the plain meaning of § 330(a)(7) requires the court to consider the provisions of § 326 *as a part of* its reasonableness inquiry." *Clemens, supra,* 349 B.R. at 731 (emphasis in original). *Clemens* also states:

> the court must now determine reasonableness with an eye on the statutory cap. Thus, the Court might easily conclude that although the Trustee's itemization supports a much lower award, the Trustee is entitled to a higher amount in light of its consideration for § 326(a) as part of the reasonableness determination.

*Id.*

Collier states "[t]he primary effect of the change should be that, in the majority of cases, a trustee's allowed fee will presumptively be the statutory commission amount." L. King, Collier on Bankruptcy, § 330.03[1][a] at 330–14 (15th ed. rev' d 2006). Noting that the commission must still be reasonable, Collier also states:

> Courts may be expected to continue to assess the reasonableness of a trustee's fee and award a fee that is less than the statutory commission in light of the effort expended or results obtained. For example, duplicative services, unnecessary services or nonbeneficial services should continue, as under present law, to be excluded from an award of compensation as not reasonable, even if the result is an award that is less than the statutory commission.

> Similarly, there may be cases where the amount of "moneys disbursed" by the trustee may be very high in relation to the services performed, presenting a risk that a trustee may be overcompensated by applying the commission percentage. Chapter 7 cases filed with a significant amount of money in existing bank accounts, or cases where the trus-

tee has operated the business for a period of time, or other cases where there are significant disbursements without a proportionate effort by the trustee, are examples of cases where the commission fee may not be reasonable. In such cases, even if all the services were properly performed, courts will need to assess whether the implied hourly rate is so high as to render the fee not reasonable.

*Id.* at 330–15.

 I find both these interpretations to be helpful and persuasive, and adopt the following method for determining reasonableness "with an eye on the statutory cap." Section 330(a)(7) creates a presumption that the statutory maximum is reasonable compensation. If the court, after reviewing time records and all other relevant facts and circumstances, determines that the statutory maximum is not substantially disproportionate to the value of the services required from the trustee, the court should award the statutory maximum. If, after such review, the court determines that the statutory maximum is substantially disproportionate to the value of the trustee's services, the court should award as a "reasonable commission" the maximum amount that is not substantially disproportionate to the value of the trustee's services to the estate.

### C. Application of the Governing Standard

 1. *Statutory maximum.* The statutory cap in this case is $35,891.

2. *Functions performed.* The funds that the Trustee distributed came from a single asset that was easily liquidated, Debtor's residence. Debtor had not concealed his ownership of the property. Trustee did not need to recover the property from a transferee. Trustee did not even need to hire a broker; Debtor had

already located a buyer and the sale was in escrow. When Trustee learned of the pending sale, she spoke with a broker who advised her that the $765,000 purchase price was reasonable, she instructed her counsel to obtain court authorization to close the sale, she reviewed the closing documents, and she instructed the title company to pay her the proceeds of sale. Secured claims totaling approximately $540,000 were paid directly from escrow by the title company, but are included in calculating the statutory maximum commission.

It is important to examine the other functions performed by Trustee. Even a trustee who merely disburses funds from the debtor's bank account could be entitled to receive the statutory maximum commission if the determination of claims was complex. That is not the case here. There were only eight unsecured and priority claims filed. Trustee did not object to any of these claims, and she states that she spent less than five hours reviewing those claims.

3. *Results achieved and quality of services performed.* In evaluating the quality of services and results achieved, I do not look only, or even primarily, at whether creditors were paid in full. A ten percent dividend can represent a minor miracle, and a 90 percent dividend can represent a failure, depending on the hand the trustee is dealt. That said, the quality of services and results achieved by Trustee in the present were, except with respect to the fee application itself, excellent. Trustee acted quickly and expertly in evaluating, taking over, and closing the sale that Debtor had arranged.

The quality of Trustee's services was poor with respect to her fee application. In the face of this court's Fee Guidelines, Collier, and the published decisions on point, Trustee failed to submit time records or a narrative statement with her fee application. This caused concrete harm to Debtor, who was required to file a written objection and attend a fee hearing to compel Trustee to submit a proper fee application. The harm to Debtor was unnecessary. Trustee could have submitted a fee application in compliance with the Guidelines and still urged the court to rule that she was entitled to the statutory maximum irrespective of hours. Trustee had not previously urged the court to change the Fee Guidelines in light of the amendments to section 330. What Trustee did was to decide herself what the law is and, on the basis of that decision, ignore the court's Guidelines and long-standing practice. For the reasons stated in this court's prior opinion in this case, time records and a narrative statement are still required as part of the fee applications of chapter 7 trustees. *McKinney, supra,* 374 B.R. at 730–32. The court does not suggest that Trustee's failure to submit time records and a narrative statement represents a violation of Bankruptcy Rule 9011 or any Local Rule of this court. That Trustee had an arguable basis for her position, however, does not exempt her from some adjustment to her compensation when the statute, Guidelines, and caselaw gave her fair warning of the requirement, when she did not prevail, and when her failure to abide by the Guidelines caused harm to Debtor.

4. *Risk of nonpayment.* Trustee never faced any risk that the estate would not have sufficient funds to pay her compensation and expenses.

5. *Other professionals.* The principal activity in this case was the sale of Debtor's residence. I note that Trustee received substantial assistance from her counsel, who was awarded $11,024 for his work on the sale. I also note that Trustee did not incur the cost of a broker. This

latter fact does not weigh substantially in favor of Trustee, however, because the Debtor had already found a buyer and the sale was in escrow when Trustee was appointed.

6. *Time expended.* Trustee has submitted contemporaneous time records documenting 19.4 hours. Because the court's Guidelines and long-standing practice require contemporaneous time records, the court is reluctant to credit her after-the-fact reconstructions and estimates. Nor does the court find to be necessary any of the time Trustee has incurred arguing unsuccessfully that she cannot be required to submit time records. *See, e.g., Estes & Hoyt v. Crake (In re Riverside–Linden Investment Co.),* 925 F.2d 320 (9th Cir. 1991); *In re Carmona,* 362 B.R. 453, 455–56 (Bankr.C.D.Cal.2006). Trustee should be credited with the additional time (two to three hours) it would have taken her timely to prepare a proper fee application.

Using the 22.4 hours supported by contemporaneous time records (as adjusted for preparation of a proper fee application), the implied hourly rate of the statutory maximum fee would be $1,600. Using the 35 hours Trustee estimates for her services other than the disputed fee application, the implied hourly rate at the statutory maximum would be $1,025.

■ After consideration of all the factors noted above, and acknowledging that a reasonable commission can substantially exceed a Lodestar-based fee, I determine that the statutory cap is substantially disproportionate to the services Trustee was required to perform in the present case. I further determine that the largest commission that is not substantially disproportionate to the services required is $15,000. This amount would have been higher had Trustee initially complied with the Guideline requirements to file time records and a narrative statement. That Trustee is not awarded the statutory cap is not a reflection on the quality of Trustee's services, except with respect to her failure to follow the Guidelines regarding the fee application itself. This is simply one of those cases in which Trustee received a relatively liquid asset, the case involved little other administration, and the statutory cap bears little relation to the services required.