## IN RE: TURNER GRAIN MERCHANDISING, INC., Debtor.

### CASE NO. 2:14–bk–15687 J

United States Bankruptcy Court,
E.D. Arkansas,
**HELENA DIVISION.**

May 23, 2017

---

Gregory H. Bevel, Rochelle McCullough, LLP, Dallas, Richard L. Cox, Richard Cox, PA, Hot Springs, Robert Bynum Gibson, III, Thomas S. Streetman, Streetman, Meeks & Gibson, PLLC, Crossett, M. Randy Rice, Rice & Associates, Little Rock, for Trustee.

Rachel V. Hampton, Keech Law Firm, P.A., Kevin P. Keech, Little Rock, AR, for Debtor.

## ORDER

Phyllis M. Jones, United States Bankruptcy Judge

Before the Court is the *Application for Allowance of Compensation and Reimbursement of Expenses for Trustee* ("**Application**") filed by Richard L. Cox ("**Cox**" or "**Former Trustee**") on November 16, 2016 (Doc. No. 512) and the *Trustee's Re-sponse to Former Trustee's Application for Compensation and Reimbursement of Expenses* ("**Response**") filed by M. Randy Rice ("**Rice**" or "**Successor Trustee**") on November 27, 2016 (Doc. No. 516).

The Application seeks a trustee's fee in the amount of $45,496.07 based on trustee compensation percentages set forth in 11 U.S.C. § 326(a) for distributions made by Cox in the amount of $844,921.31.[1] Rice, in his Response, states that while he does not object to a trustee's fee being approved based on the distributions made by Cox, he objects to the percentages used by Cox to calculate the amount sought. Rice as-serts that the commissions paid to Cox, as the former trustee, and to himself, as the successor trustee, should be paid on a *pro rata* basis on total distributions made in the case by all trustees.

The Application and Response were heard on February 14, 2017, and after receiving evidence and the undisputed statements of counsel the Court took the matter under advisement. The Court now grants the Application in regard to the expenses but disallows the requested fees without prejudice for Cox to re-apply for trustee compensation at the conclusion of the case in an amount calculated in accor-dance with the method set out below.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The follow-ing shall constitute the Court's findings of fact and conclusions of law made in accor-dance with Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

Turner Grain Merchandising, Inc., filed a voluntary petition for relief under the provisions of Chapter 11 on October 23,

---

1. The Application also seeks reimbursement of expenses in the amount of $2,923.64. Rice does not object to the allowance of the ex-penses.

2014. On May 15, 2015, the case was converted to a case under Chapter 7, and Cox was appointed Chapter 7 trustee. On May 12, 2016, Cox resigned as trustee.[2] On the same date that Cox resigned, Rice was appointed as the successor Chapter 7 trustee.

At the hearing, Cox introduced Petitioner's Exhibit 1, which included a Cash Receipts and Disbursements Record ("**Report**") reflecting the receipts and disbursements for the case during the time Cox was the Chapter 7 trustee. The Report reflects that $619,251.39 was turned over to Cox from the Chapter 11 estate on June 2, 2015. Additionally, $240,059.30 was received by Cox from an accounts receivable action originally filed as an interpleader in the United States District Court and $314,688.38 was received from Helena National Bank as a recovery in an adversary proceeding. (Petitioner's Ex. 1). During the time Cox was the Chapter 7 trustee he made two disbursements to Rabo AgriFinance, Inc., one in the amount of $602,379.45 (Check No. 101) and the second in the amount of $237,672.34 (Check No. 102). (Petitioner's Ex. 1). In addition he incurred bank and technology service fees in the amount of $4,869.52.[3] (Petitioner's Ex. 1). The two disbursements to Rabo AgriFinance, Inc. and the bank and technology services fees total the $844,921.31 disbursement amount referenced in the Application. On May 17, 2016, Cox transferred the remaining funds on hand in the amount of $329,077.76 to Rice (Check No. 103). (Petitioner's Ex. 1).

Cox stated that the trustee fee he requested in his Application is based on the percentages set forth in 11 U.S.C. § 326(a). He stated that historically in this District the trustee first appointed would receive the higher percentages for trustee fee commissions on the basis of "first in, first out." Therefore, he calculated the requested trustee fee using 25% of $5,000.00, 10% of $45,000.00, and 5% of $794,921.31, resulting in the fee amount of $45,496.07.

Cox acknowledged that trustees typically file interim fee applications to be paid during the case but stated he did not file interim fee applications in this case because he did not believe he had funds on hand to use to pay the fee. Rice acknowledged that had the Court approved interim trustee fees and the fees had been paid to Cox, he does not believe he would have asked that Cox disgorge the fees.

It is undisputed by the parties that Rice does not have sufficient funds on hand to pay all the administrative fees in the case and that it is too early in the case to determine if the case will be administratively solvent. Cox, however, requests that the amount of his fee be determined based on the percentages used in his Application for the disbursements he made as trustee, understanding the possibility exists that he will receive only a *pro rata* distribution on the allowed fee.

In discussing the inequities of a "first in, first out" method, Rice stated that Cox filed only one adversary proceeding while serving as trustee, but Rice, or attorneys he has retained to represent the estate, had filed forty-six adversary proceedings as of the date of the hearing. In addition, there are other pending adversary proceedings in connection with this bankruptcy case. Therefore, Rice argued, the costs associated with the administration of this case are ongoing and Rice estimated the case will be pending for an additional two to three years, at best, based on the com-

---

**2.** The record does not reflect the basis for his resignation.

**3.** There are no check numbers associated with the bank and technology service fees.

plexity of the issues involved and the number of pending adversary proceedings.

In addition, Rice stated that although he can separately bill the estate for attorney and paralegal fees for some legal services, many costs of administering the case can only be recovered through the trustee fee, and he and his office will have to absorb those costs over the next two to three years. These trustee services include handling telephone calls from creditors and other interested parties, including the press; submitting the required reports to the United States Trustee; providing documents and assisting in the preparation of tax returns for the estate; paying overhead associated with maintaining records and documents; accounting for funds received and disbursed; examining proofs of claims filed;[4] and preparing reports required to close the case.

## ARGUMENTS

Cox argues that the Bankruptcy Code does not specifically govern how to calculate fees in cases where there is more than one trustee. He relies on the language of Section 326(a) for his position that since his disbursements were made *first* he should benefit from the statutory language which provides that his compensation is "not to exceed 25 percent on the *first* $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000." 11 U.S.C. § 326(a) (2012) (emphasis added). He states that, based on the cases he has been involved in during his numerous years of experience as a Chapter 7 trustee, the original trustee in this District has historically received the higher percentages for the "first" disbursements made in the case. The successor trustee's fee is then based on the percentages in Section 326(a) that take into consideration the previous disbursement levels of the original trustee.

Rice agrees that the Bankruptcy Code does not provide how to calculate the trustee fees for cases with more than one trustee but also notes the absence of statutory authority for giving priority treatment to one trustee over another. He argues that a more equitable calculation of fees would be to base the fees on the total amount of the disbursements made in the case pursuant to the percentages and then to allocate the fees on a *pro rata* basis according to the amounts disbursed by each trustee. This approach, Rice argues, would be consistent with other provisions of the Bankruptcy Code providing that if a class of claims is not to be paid in full then the class should be paid on a *pro rata* basis. If Cox is awarded a fee of $45,496.07 based on the higher percentages for disbursing $844,921.31, Rice will have to disburse $1,413,149.67 to receive the same fee. Rice argues this result is not equitable under the circumstances of this case.

In addition, Rice contends that regardless of the size of an estate there are certain administrative services, including trustee reports and final accountings, that are functions of any case, and he believes that the basis for the higher percentages for the first distributions is to help defray the usual costs associated with administration of any size case.

## APPLICABLE LAW

The analysis begins with an interpretation of Sections 326 and 330, the Bankruptcy Code provisions that set forth the limits and standards for trustee compensation. *Section 326*

Section 326(a) fixes the schedule of compensation of trustees. It provides that the

---

4. Rice stated that over one hundred proofs of claims have been filed in this case, and the examination of those claims has yet to be completed.

court "may allow reasonable compensation" under Section 330 for the trustee's services, payable after the services are rendered. 11 U.S.C. § 326(a) (2012). Payment for a trustee's services is determined based on the amount of disbursements made by the trustee, with compensation capped at the following amounts:

> 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000 upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a) (2012).

■ The use of the phrase "may allow reasonable compensation" indicates that courts have discretion in awarding compensation to trustees. Otherwise the imperative "shall" would have been used instead of "may." *In re Mack Props., Inc.*, 381 B.R. 793, 797–98 (Bankr. M.D. Fla. 2007) (citing *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 346, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) ("may" connotes discretion)).

The House Report related to Section 326, proposed as part of the Bankruptcy Reform Act of 1978, points out that "[t]he limits in this section, together with the limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified." H.R. REP. NO. 95–595, at 327 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6283.

■ Additionally, there is ample case law interpreting Section 326 as a mechanism for providing a statutory cap on fees

and finding that the trustee is not automatically entitled to the statutory cap amount. *See, e.g., In re Mack Props. Inc.*, 381 B.R. at 799–800 (requiring a factual basis for awarding maximum fee and declining to award maximum fee); *In re Brous*, 370 B.R. 563, 568 (Bankr. S.D.N.Y. 2007) (reasoning that Section 326(a) sets a maximum limit but not a "right to or standard for awarding compensation"); *In re Ward*, 366 B.R. 470, 476 (Bankr. W.D. Pa. 2007) (denying full statutory compensation); *In re Clemens*, 349 B.R. 725, 733 (Bankr. D. Utah 2006) (declining to award trustee's requested maximum compensation).

With regard to the issue of compensating two trustees in a single case, the relevant statute is Section 326(c). It provides that if more than one person serves as trustee in a single case, "the aggregate compensation of such persons for such service may not exceed the maximum compensation prescribed for a single trustee." 11 U.S.C. § 326(c) (2012). Section 326, however, does not address the question of how to apply the sliding fee scale when more than one trustee serves in a single case.

### Section 330

While Section 326 sets forth the limits on trustee compensation, Section 330 provides the authority and the standard for compensating trustees. Under Section 330(a)(1)(A), the court may award a trustee "reasonable compensation for actual, necessary services." 11 U.S.C. § 330(a)(1)(A) (2012).

The standard of reasonableness is expanded upon by other provisions of Section 330. For example, Section 330(a)(4)(A) prohibits compensation for unnecessary duplication of services or services not reasonably likely to benefit the debtor's estate or not necessary to the administration of the case. 11 U.S.C. § 330(a)(4)(A) (2012). Sec-

tion 330(a)(2) expressly provides that the court may award compensation in an amount that is less than that requested. 11 U.S.C. § 330(a)(2) (2012). In addition, Section 330(a)(7), added in 2005 and made applicable to all trustees, provides, "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." 11 U.S.C. § 330(a)(7) (2012). [5]

The trending view of Section 330(a)(7) is that, because Congress has used the term "commission," a trustee fee is presumptively reasonable if in compliance with the formula in Section 326(a). 3 COLLIER ON BANKRUPTCY ¶ 326.02[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see also In re Rowe*, 750 F.3d 392, 398 (4th Cir. 2014); *Hopkins v. Asset Acceptance LLC (In re Salgado–Nava)*, 473 B.R. 911, 921 (9th Cir. B.A.P. 2012). These courts have held, however, that to give effect to Section 330 as a whole, the presumption may be rebutted by evidence of extraordinary circumstances.[6] *In re Rowe*, 750 F.3d at 397; *In re Salgado–Nava*, 473 B.R. at 921. If extraordinary circumstances exist and the presumption is rebutted, the bankruptcy court may then be called to determine if there is a rational relationship between the requested commission and the services actually rendered. [7] *In re Rowe*, 750 F.3d at 399; *In re Salgado–Nava*, 473 B.R. at 921.

Proceeding under this analysis, courts have reached varying conclusions about the meaning and application of "extraordinary circumstances." The court in *In re Scoggins* lists examples gleaned from various sources. *In re Scoggins*, 517 B.R. 206, 217 (Bankr. E.D. Cal. 2014). Some of these examples include the following extraordinary circumstances: the case administration is below acceptable standards; trustee duties are delegated to an attorney or other professional; trustee fees are greater than the amount left for unsecured

**5.** In addition, Section 330(a)(3), although no longer directly applicable to compensation for Chapter 7 trustees, provides a list of factors for courts to consider in determining the reasonableness of compensation for *Chapter 11* trustees, examiners, and professional persons. Section 330(a)(3) was amended in 2005 to apply specifically to Chapter 11 trustees without out reference to trustees in cases filed under other chapters. Prior to the amendment, the factors applied to compensation for all trustees regardless of chapter. Accordingly, following the amendment, courts have found Section 330(a)(3) "immaterial in determining the compensation for a Chapter 7 trustee." *In re Rowe*, 750 F.3d 392, 396 (4th Cir. 2014); *see also Hopkins v. Asset Acceptance LLC (In re Salgado–Nava)*, 473 B.R. 911, 919 (9th Cir. B.A.P. 2012) (stating the factors of Section 330(a)(3) "no longer directly apply to chapter 7 trustees"); 3 COLLIER ON BANKRUPTCY ¶ 330.02[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (stating the 2005 Amendments "changed the legal framework ... by excluding chapter 7 trustees from the entities subject to the mandatory application of the factors listed in section 330(a)(3).")

Nevertheless, some courts have continued to apply various factors, similar to the factors listed in Section 330(a)(3), in considering the reasonableness of compensation awards to Chapter 7 trustees if such application is warranted by the facts and circumstances of the case. *See, e.g., In re Clemens*, 349 B.R. at 732.

**6.** The requirement of "extraordinary circumstances" is not statutory; it is borrowed from the U.S. Trustee's policy of refraining from objecting to "maximum commissions for chapter 7 trustees except in 'extraordinary circumstances.'" *In re Scoggins*, 517 B.R. 206, 215 (Bankr. E.D. Cal. 2014) (citing U.S. TRUSTEE, HANDBOOK FOR CHAPTER 7 TRUSTEES, ch. 2–1 at 39; *In re Rowe*, 750 F.3d at 397; *In re Salgado–Nava*, 473 B.R. at 922 n.16). As the court in *Scoggins* points out, the U.S. Trustee's policy lacks the force of law. *Id.*

**7.** According to the court in *In re Salgado–Nava*, this analysis "may, but need not necessarily include, the § 330(a)(3) factors and a lodestar analysis." *In re Salgado–Nava*, 473 B.R. at 921.

claims; disbursements are high in proportion to effort expended by the trustee; the trustee assumes and completes a sale contract executed prior to bankruptcy; or a "carve out" or "short sale" has resulted in artificial inflation of the estate. *Id.* (citing U.S. TRUSTEE, HANDBOOK FOR CHAPTER 7 TRUSTEES, ch. 2–1 at 39, ch. 7 at 4–1; *In re Rowe*, 750 F.3d at 397; *In re Salgado-Nava*, 473 B.R. at 922 n.16; 3 COLLIER ON BANKRUPTCY ¶ 330.02[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *In re McKinney*, 383 B.R. 490, 492 (Bankr. N.D. Cal. 2008); *In re KVN Corp., Inc.*, 514 B.R. 1, 5 (9th Cir. B.A.P. 2014)).

■ Although termed a "commission" under Section 330(a)(7), a trustee fee is still limited by Sections 330 and 326 to reasonable compensation, and the reasonableness standard permits a court "to award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2) (2012); *see also In re Coyote Ranch Contractors, LLC*, 400 B.R. 84, 95 (Bankr. N.D. Tex. 2009) (stating that in awarding Chapter 7 trustee fees, the issue is whether the trustee's services resulted in tangible and material benefit to the estate); *In re Owens*, No. 05–70329–fra7, 2008 WL 4224530, at *2 (Bankr. D. Or. Sept.15, 2008) (finding requested fees excessive and disproportionate to benefit of services); *In re McKinney*, 383 B.R. at 494 (recognizing that if statutory maximum is substantially disproportionate to the value of the trustee's services to the estate, court will award the maximum amount that is not substantially disproportionate); 3 COLLIER ON BANKRUPTCY ¶ 330.02[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (stating the court may "award less than the amount requested"). *But see Mohns, Inc. v. Lanser*, 522 B.R. 594, 601 (E.D. Wis. 2015) (ruling that courts should not reduce commission awarded to a Chapter 7 trustee based on the perception that statutory commission was disproportionate compensation).

## DISCUSSION

### Reasonableness of Fees

■ With Sections 326 and 330 and interpreting case law as guidance, the Court begins with the issue of whether Cox's requested fees, as a "commission" pursuant to Section 330(a)(7), are presumptively reasonable to the extent that he is entitled to the maximum fee award of $45,496.07. Under this approach, extraordinary circumstances may rebut the presumption of reasonableness. Based on the undisputed statements and evidence presented at the hearing, the following facts are relevant to the determination of extraordinary circumstances.

First, the circumstance of two trustees serving consecutively in a single case is not the typical way Chapter 7 cases are administered. The Bankruptcy Code does not explicitly address how to interpret the sliding scale of Section 326(a) to allocate trustee fees in this situation.

Second, several professionals have been hired by the estate to pursue adversary proceedings and to provide other services. It is too early to determine how these proceedings may affect the administration of the estate. This fact was recognized by Cox, who acknowledged that even if his trustee's fee is allowed in full, he realizes he may very well receive only a *pro rata* share of his fee if the estate ultimately proves to be administratively insolvent. Of course, any *pro rata* fee treatment would also apply to Rice's fees.

Third, a comparison of the services to be provided by Rice with those already provided by Cox reflects that Rice will ultimately serve longer and will be required to fulfill the most significant administrative

**104**

tasks in the case. By Rice's optimistic estimate, this case will remain open for another two or three years while the Successor Trustee's adversary proceedings, among others, run their courses and the claims process is completed. During this period, Rice will be expected to fulfill ongoing administrative duties, which will be expansive considering the size and complexity of the case. The duty to examine claims will be a particularly time-consuming task, with more than one hundred proofs of claim as yet to be evaluated. The Successor Trustee's review of claims will be crucial in maximizing the distribution to each allowed, unsecured creditor.

By contrast, the only evidence in the record as to Cox's administrative efforts is Petitioner's Exhibit 1. It reflects that Cox made two large disbursements to a single creditor and incurred bank and technology service fees. Cox then turned over $329,077.76 to the Successor Trustee upon his resignation. Yet if Cox's fee of $45,496.07 is allowed the possibility exists that Cox could receive a higher fee than Rice, who will probably serve three times longer and shoulder the administrative burden of the estate's forty-six plus adversary proceedings and the claims review process for the more than one hundred claims filed in the case. Until the case is fully administered, the actual result cannot be determined. At this point, under Cox's interpretation of Section 326(a), Rice will have to recover an additional $1,084,071.91 to disburse $1,413,149.67 to creditors to be entitled to receive the same fee amount as that requested by Cox.

In summary, two trustees will share one aggregate trustee fee in circumstances where the Successor Trustee will ultimately provide more administrative services than the Former Trustee. Considering these facts, the Court concludes that extraordinary circumstances exist to rebut the presumption of reasonableness of the trustee fee being requested by Cox. The next issue to be determined is whether there is a rational relationship between the requested commission and the services actually rendered.[8] *In re Rowe*, 750 F.3d at 399; *In re Salgado–Nava*, 473 B.R. at 921.

█ In this case, there is little evidence linking the fees requested by Cox with the services rendered for the benefit to the estate. Cox introduced Petitioner's Exhibit 1 showing all receipts and disbursements made during his tenure as trustee. This was the only documentary evidence introduced at the hearing and it clearly reflected that $619,251.39 of the $844,921.31 Cox disbursed came from funds the debtor-in-possession turned over to Cox on June 2, 2015, after conversion from Chapter 11 to Chapter 7. The trustee commission on disbursing the $619,251.39, alone, under Cox's "first in, first out" theory under Section 326(a), generated $34,212.57 (all but $11,283.50) of the requested fee amount. Yet Cox expended minimal effort to obtain these funds, all of which were paid to a secured creditor or to the bank for technology and service fees. The Court notes that a trustee who "merely disburses funds from the debtor's bank account" may still earn fees at the statutory cap if the "determination of claims was complex." *In re McKinney*, 383 B.R. at 495. However, if Cox encountered any complication in determining the claims paid it is not apparent from this record.

---

8. This inquiry is similar to an alternate view of Section 330(a)(7) that focuses on whether the fees are disproportionate to the benefit of the services provided. Cases following this view often consider the lodestar or Johnson factors as an aspect to be considered along with the other facts and circumstances of the particular case. *See, e.g. In re Clemens*, 349 B.R. at 730–31.

The Court also notes that the result might be different if Cox had continued to serve as trustee in this case. In the circumstance where one trustee functions throughout a case and distributions total more than $1,000,000.00, the trustee's later distributions would generate a trustee fee paid at a lower percentage rate to counter the higher percentage rates on earlier distributions. Had Cox remained in the case, the higher percentages attributable to the first distributions would have been balanced by the lower percentage used on later distributions. In the instant case, however, the higher rates will be countered with the lower rate on fees paid to Rice, not Cox. At the same time, Rice will be required to expend numerous administrative hours to fulfill his duties as Successor Trustee including the review of the claims, preparation of required reports, duties attendant to being plaintiff in the numerous adversary proceedings, making distributions, and filing his final report.

■ Cox argues that he should be paid in accordance with the statutory language allowing the greatest fee rate for the first disbursements and that this is the way initial and successor trustees have historically been compensated in this District. However, applying this interpretation of the formula to a case with two trustees has the potential to distort the statute's purpose and result in payments that overcompensate the first trustee and undercompensate the second trustee. Consequently, neither is reasonably compensated as required by Sections 326 and 330. Reasonableness, not historic practice, is the standard the Court must uphold.

Based on the foregoing, the Court determines that Cox's fee application in the amount of $45,496.07 will be denied because of the extraordinary circumstances created by the facts in this case and the lack of any evidence of a rational relation-ship between the fees Cox requested and the services he rendered.

*Apportionment of Fees*

■ Cox's Application for fees calculated at the maximum rate having been denied, the remaining question is how to compensate Cox and Rice for the services rendered or to be rendered in the case. At the hearing, Rice proposed that the Court adopt the reasoning in *In re Calhoun*, a case dealing with compensating initial and successor trustees in a single Chapter 7 case. *In re Calhoun*, 430 B.R. 536 (Bankr. W.D. Wis. 2010).

The *Calhoun* court began its analysis by recognizing two important principles. First, the sliding scale in Section 326(a) represents the maximum compensation to be awarded. Second, regardless of the number of trustees serving in a case, " 'the aggregate compensation ... may not exceed the maximum compensation prescribed for a single trustee.' " *Id.* at 537 (quoting 11 U.S.C. § 326(c) (2012)).

In *Calhoun*, the initial trustee's position was the same as Cox's, which was that he should receive fees based on his distributions and that the successor trustee "simply picks up where the first trustee leaves off." *Id.* at 538. The court observed that its research revealed no case that followed this method suggesting that this "silence may be explained by the inequitable results of this approach." *Id.* The court also rejected the approach whereby each trustee would be entitled to fees under the Section 326(a) formulas without reference to the other's work. *Id.* at 538 n.1. The court explained this approach is prohibited by Section 326(c), which provides that the aggregate fees for two trustees may not exceed the maximum prescribed for a single trustee. *Id.*

The *Calhoun* court resolved the issue by treating the trustee commission as a pot of

money to be divided after the case concludes and total disbursement amounts are known. *Id.* at 538 (citing *Gold v. Guberman (In re Computer Learning Ctrs., Inc.)*, 407 F.3d 656 (4th Cir. 2005); *In re Frost*, 214 B.R. 295 (Bankr. S.D.N.Y. 1997)); *see also In re Arius, Inc.*, 237 B.R. 843, 847 (Bankr. M.D. Fla. 1999) (concluding the "proper method of calculating a trustee fee cap involving the service of more than one trustee within a single chapter of the Bankruptcy Code is to include all disbursements in the case"). The aggregate trustee fee can then be calculated under the Section 326(a) formula based on total distributions in the case, and "each trustee is entitled to a *pro rata* share of this sum." *In re Calhoun*, 430 B.R. at 538. The trustee's *pro rata* share is calculated by dividing each trustee's distributions by the total amount distributed in the case. Rice contends that this method based on disbursements is preferable to basing fees on time spent, which can be burdensome since it requires that the trustee keep time records for his administrative services in the case.

The Court agrees that, considering all the methods for compensating two trustees in a single case, the approach taken by the *Calhoun* court is the most equitable way to apportion the aggregate trustee fees between Cox and Rice, given the facts and circumstances of this case. Additionally, calculating compensation due two trustees based on total distributions conforms to the fee cap of Section 326 and the standard of reasonableness of Section 330.

The Court adopts the method used by the court in *In re Calhoun* and concludes that the fees for the trustee services due Cox and Rice will be apportioned according to the *Calhoun* method. As the *Calhoun* decision recognizes, this method will typically require waiting until the end of the case when all disbursements have been made for the compensation amounts to be determined. *Id.* at 538; *see also In re Frost*, 214 B.R. at 297 (stating because Chapter 7 trustee fees are contingent on the total disbursements made, it can be argued that an interim trustee cannot be fully compensated until the case is closed (citing 3 Collier on Bankruptcy ¶ 326.03[1][a] (15th ed. 1996))). Under the facts of the case before the Court, the parties do not dispute that a delay in the distributions may be necessitated by other factors as well.

## CONCLUSION

The Court determines that, based on the facts of this case, the aggregate trustee compensation should be calculated under the Section 326(a) formula based on total distributions in the case, and each trustee is entitled to a *pro rata* share of this sum. Each trustee's *pro rata* share will be calculated by dividing the trustee's distributions by the total amount distributed in the case. This method is determined by the Court to be the most equitable basis for allocating the aggregate trustee fee available under Section 326(a). Therefore, the Application is granted, in part, as to the expenses requested in the amount of $2,923.64. The Application is denied as to the trustee fees requested in the amount of $45,496.07. At the conclusion of the case, Cox may resubmit an amended application with fees calculated pursuant to the *pro rata* method outlined above.

IT IS SO ORDERED.