In re Edward Clay **GALDABINI** and
Jennifer Rowell Galdabini,
Debtors.

No. 10–04160–TLM.

United States Bankruptcy Court,
D. Idaho.

June 6, 2012.

Deborah Alison Gates, Nampa, ID, for Debtors.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Chief Judge.

On April 17, 2012, the chapter 7 trustee, Richard E. Crawforth ("Trustee"), filed "Trustee's Final Report" and proposed distribution, Doc. No. 50 (the "TFR"), "Trustee's Application for Compensation and Reimbursement of Expenses," Doc. No. 51 ("Application"), and the required notice of the TFR and the Application, Doc. No. 52 ("Notice"). No objections or

other responses to the TFR or the Application were received as a result of the Notice, save a terse docket text entry from the Office of the U.S. Trustee acknowledging that such office had "reviewed" the same. Doc No. 53.

The TFR, Application and Notice indicate that Trustee proposes to distribute $175,597.28 (the balance of the funds of the estate after prior authorized distributions). The Application seeks compensation for Trustee of $12,466.06, and expense reimbursement to Trustee of $40.71. The submissions acknowledge that the requested compensation is the "maximum amount" allowable in the case under § 326(a).[1] There are no priority unsecured creditors to be paid, and Trustee's counsel has previously been allowed and paid $7,532.45.[2] Thus, the net funds remaining after Trustee's requested compensation would be $163,090.51. This would allow for a 33.8% dividend to holders of nonpriority unsecured claims.

Upon review, the Court issued an Order to Supplement the Record, requiring Trustee to provide certain materials in support of the Application's requested compensation. Doc. No. 55 ("Order"). This Order specifically referenced the Court's prior decision in *In re B & B Autotransfusion Servs., Inc.*, 443 B.R. 543 (Bankr.D.Idaho 2011).[3] The Order further required Trustee to include in his supplementation of the record a "sworn affidavit . . . which includes an itemization setting forth the date and times spent providing all services rendered . . . together with a narrative discussion or explanation of any other information" Trustee wanted the Court to consider.

Trustee filed an Affidavit in Support of Trustee's Fees and Expenses, Doc. No. 57 ("Affidavit"). Though not "sworn" as instructed, the Court accepts the Affidavit as Trustee's submission in response to the Order. The Affidavit, however, lacks the itemization of services by date and time expended that the Order required. It is, rather, a brief and general narrative of the course of events in this chapter 7 liquidation, along with argument in support of the Application.

The Court has carefully reviewed the Affidavit as well as the balance of the record in this case. Certain matters may be highlighted.

Edward Galdabini and Jennifer Rowell Galdabini ("Debtors") filed this case on December 28, 2010. Debtors' petition and schedules disclosed their ownership of residential real property in Nampa, Idaho, with an alleged fair market value of $230,000 and a secured claim of $205,000, the balance being claimed as exempt. The secured claim was scheduled as held by Jim and Becky Rowell, that surname being the same as the joint debtor's middle name. The Rowells were, in fact, her parents.

In exercise of his duties, Trustee requested that the Rowells provide documentation of their security interest. The documentation he received consisted of a promissory note that had been recorded in the Canyon County real property records. Trustee further checked those records, and obtained a preliminary title report. He then retained counsel to pursue litigation to avoid the Rowells' asserted lien and

---

**1.** Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S.Code §§ 101–1532.

**2.** *See* Doc. No. 49. In addition, a $250.00 adversary proceeding filing fee was paid.

**3.** Trustee was also the chapter 7 trustee in *B & B Autotransfusion* and thus closely familiar with that case beyond just the reported decision.

secured claim. *See* Adv. No. 11–06022–TLM.

That adversary proceeding was concluded by a stipulated judgment entered on October 21, 2011, following approval of a compromise under Fed. R. Bankr.P. 9019 in the chapter 7 case on October 4, 2011. *See* Doc. No. 33 (motion), Doc. No. 36 (order); *see also* Adv. Doc. No. 9 (stipulation), Adv. Doc. No. 10 (judgment). Under the compromise and judgment, the lien or security interest of the Rowells was avoided, and preserved for the benefit of the bankruptcy estate; the Rowells agreed to pay $8,000 in settlement of a related preference claim; and Trustee agreed to sell the estate's interest in the real property to the Rowells for $170,000. Debtors agreed in the same compromise and stipulated judgment that the preserved lien was superior to their homestead exemption. The compromise also provided that the Rowells would be allowed to share in distributions from the estate based on their filed proof of claim in the amount of $398,784.08.[4]

Trustee had the assistance of counsel throughout this process. Counsel later sought allowance of compensation and reimbursement of expenses under § 330, and all requested amounts were allowed.

Given that Trustee failed to provide the itemization of services he rendered, the Court has again reviewed the submissions of his counsel. *See* Doc. No. 43 ("Counsel's Application"). Counsel's Application asserts:

> The Trustee hired the attorneys to assist in avoiding a Deed of Trust/Loan from the debtors to the parents on a home which was otherwise free and clear of other encumbrances. *The attorneys* investigated the facts, drafted and filed the complaint to avoid the transfer and preferential payments. *The attorneys* then engaged in extensive settlement negotiations with [Rowells' counsel]. Ultimately *the attorneys* were able to arrive at a compromise which included a stipulated judgment and purchase of the home by the debtors' parents. *The attorneys' services resulted in the benefit of a recovery to the estate of approximately $184,000* which included approximately $10,000 in a preference recovery from the debtors' parents.

*Id.* at 3 (emphasis added). The detailed time entries supporting Counsel's Application have also been re-reviewed. *See* Doc. No. 43–1. Certain of those entries describe meetings or conversations between counsel and Trustee, and also a hearing where the Court's minute entry reflects Trustee's appearance. Those entries total a maximum of 4.5 hours.[5] *Id.* at 1–4. Counsel's submissions support the above quoted language from their summary that emphasizes their role in undertaking and resolving the litigation, including the compromise and related sale.[6]

---

**4.** The TFR and Notice reflect that $134,923.57 of the total $163,090.51 going to unsecured creditors will be paid to the Rowells.

**5.** Mar. 10, 2011 (some portion of .5 hours); May 12, 2011 (some portion of .5 hours); May 27, 2011 (.3 hours); June 3, 2011 (some portion of .3 hours); June 15, 2011 (.2 hours); July 1, 2011 (some portion of .4 hours); Aug. 9, 2011 (1.0 hour); Sept. 26, 2011 (.6 hours); Oct. 19, 2011 (.3 hours); Oct. 27, 2011 (some portion of .2 hours); Nov. 7, 2011 (.2 hours).

**6.** Counsel's time entries total 35.50 hours. *Id.* While it is reasonable to assume that Trustee spent more time in connection with the case beyond the 4.5 hours dealing with counsel, he has failed to provide the itemization required by the Order, or any other submissions that allow the Court to evaluate what Trustee calls his "extensive hours" devoted to the case. Affidavit at 3.

The Affidavit also notes that Trustee (a) collected Debtor's tax refunds; (b) recovered the amount of non-exempt bank accounts on the date of filing; and (c) negotiated a private sale to Debtors of non-exempt equity in a vehicle. The TFR and other documents of record establish that the respective recoveries for the benefit of the estate from these three items were (a) $5,569.84 in net tax refunds,[7] (b) $31.34 in accounts, and (c) $720.00 from the vehicle.

Trustee performed the usual and ordinary duties required in all cases, including handling the accounts in which estate funds were deposited, and preparing for and conducting a § 341(a) meeting. His Affidavit also asserts work performed in reviewing proofs of claim for coherence with the schedules and for appearance of validity and, "after resolution of all objections to proofs of claim," his preparation of the TFR and related submissions.[8]

## DISPOSITION

 B & B Autotransfusion establishes the legal standards and analysis applicable to allowance of trustee compensation in this District.[9] It reflects that § 326(a) provides a maximum fee—a "cap"—but not an entitlement. It further establishes that even after the 2005 amendments to the Code, and elimination of "trustees" as among those subject to § 330(a)(3), other aspects of § 330 still

apply. Any compensation allowed a trustee must still be found to be "reasonable" in addition to falling as well as fall at or below the maximum allowable under § 326(a). As of the date of this Decision, there are no controlling appellate decisions that alter the law as set out in B & B Autotransfusion.

In this prior decision, the Court relied on In re McKinney, 383 B.R. 490 (Bankr. N.D.Cal.2008), for a "methodology for determining reasonableness with an eye on the statutory cap." 443 B.R. at 552 (internal quotation marks omitted). The Court described a number of factors that it would consider in evaluating reasonableness, with the aim of determining "the maximum amount that is not substantially disproportionate to the value of the trustee's services to the estate." Id. at 552–54.

 In applying the McKinney and B & B Autotransfusion principles to the record herein, the Court concludes Trustee has failed to carry his burden to show the reasonableness of his requested $12,466.06 in compensation. The record, including Trustee's Affidavit and his counsel's earlier submissions and the other documents on file, shows that the majority of the funds being administered were acquired through the efforts of such counsel.[10] Counsel was

7. A State of Idaho 2010 refund of $1,042.00 and an IRS 2010 refund of $7,551.00, totaling $8,593.00, were received by Trustee. He distributed to Debtors a 2010 Earned Income Credit of $2,977.00 and a 2010 pro-rata interest (given the December 28, 2010 filing date) of $46.16. Net refunds were therefore $5,569.84. See TFR at 6. Nothing in the record suggests there was any difficulty in obtaining the tax refunds.

8. Only one objection to a proof of claim was filed, see Doc. No. 28, and following a failure of the creditor to respond, the objection was sustained by default and without hearing. See Doc. Nos. 29, 30.

9. B & B Autotransfusion analyzed and relied on well-respected treatise authorities and on a number of cases decided since 2005, including In re Healy, 440 B.R. 834 (Bankr.D.Idaho 2010).

10. Counsel was primarily responsible for the pursuit of the litigation, the negotiations and settlement, and the collection of $170,000 in the compromise of lien/private sale of the residence, and the $8,000 in preferences. Trustee was primarily responsible for gathering the tax refunds and recovering the non-exempt vehicle equity, together totaling (along with the small account balances) $6,321.18.

allowed all fees and costs requested. *See* Doc. No. 49 (allowing a total of $7,532.45). Nothing presented establishes the time or effort involved in Trustee's collection of the other assets. While certainly Trustee performed services in connection with those matters and in other regards,[11] *B & B Autotransfusion* and the other authorities discussed therein place on him the burden of showing the reasonableness of the $12,466.06 he sought in compensation for all the services he rendered.

The Court finds the burden unmet, and the requested maximum of $12,466.06 substantially disproportionate to the value of the services required and provided. The Court, in exercise of its informed discretion, and under all the factors identified above and in the cited authorities, determines that $6,000.00 is a reasonable commission. *See* § 326(a)(1); § 330(a)(1); § 330(a)(2). The requested expenses of $40.71 will also be allowed.

The Court will enter an Order upon this Decision.

**11.** The Court recognizes, and has considered, that Trustee initially investigated and applied his skill and experience to identify the potential issues with the Rowells' claimed lien.