**In re Sharon Lee SCOGGINS, Debtor.**

**In re Joe Alex Ruelas and Cynthia Renee Ruelas, Debtors.**

**In re George Popescu and Viola Popescu, Debtors.**

**In re Dry–Mix Products Company, Inc., a California Corporation, Debtor.**

Nos. 12–42158–C–7, 13–21100–C–7, 12–41237–C–7, 11–21956–C–7.

United States Bankruptcy Court, E.D. California.

Signed Sept. 8, 2014.

Thomas A. Aceituno, Folsom, CA, in propria persona.

Allen C. Massey, Sacramento, CA, for Tracy Hope Davis, United States Trustee for Region 17.

## OPINION REGARDING CHAPTER 7 TRUSTEE FEES

CHRISTOPHER M. KLEIN, Bankruptcy Judge.

Bankruptcy trustee compensation has been a puzzle since enactment of 11 U.S.C. § 330(a)(7) providing that "reasonable" trustee compensation under the "not to exceed" formula of § 326(a) be "treated" as a "commission." Two chapter 7 trustees now request four "commissions" totaling $121,415.

The first issue is whether other subsections of § 330, including the § 330(a)(2) power to award "less than the amount of compensation that is requested," retain vitality in view of the § 330(a)(7) "commission" provision. The answer is yes.

■ The second issue is what constitutes "extraordinary" in the wake of the decision of the Ninth Circuit Bankruptcy Appellate Panel in *Appeal of Hopkins, Ch. 7 Trustee* [1] *(In re Salgado–Nava)*, 473 B.R. 911 (9th Cir. BAP 2012). The trustees and U.S. trustee equate "commission" with a fixed fee and say that fees may be reduced only in "extraordinary circumstances," but they do not explain what is "extraordinary." This decision holds that whether the fee is "unreasonably disproportionate" is important to the analysis of § 330(a)(2) fee reductions under any standard, including "extraordinary" circumstances.

■ The third issue is what constitutes "meaningful" distribution in the wake of

John R. Roberts, Placerville, CA, in propria persona.

**1.** The case name is so styled for accuracy. The BAP listed all creditors as appellees, but no creditor appeared.

the BAP decision in *Appeal of Green, Ch. 7 Trustee (In re KVN Corp.)*, 514 B.R. 1 (9th Cir. BAP 2014). This decision holds that a distribution to unsecured priority and general claims that is less than the trustee's fee is not "meaningful" and is disproportionate and presents an "extraordinary" circumstance.

This decision also addresses the procedural problem of how to screen for fees that are not "reasonable" by requiring detailed fee applications backed by time records and narrative statement of services for: (1) the top 5 percent of trustee fee requests in this district, i.e. above $10,000; (2) all cases in which the trustee seeks fees exceeding the amount remaining for unsecured priority and general claims; (3) all cases involving "carve-out" and "short sale"; and (4) all cases where the trustee operates a business.

Finally, this decision supplies a heretofore missing evidentiary link in the form of evidence of actual compensation of chapter 7 and chapter 13 trustees so as to enlighten assessment of "reasonable" trustee compensation.

### Facts

The four chapter 7 trustee fee requests consolidated here for decision illuminate different facets of the same question. Three are individual cases; the fourth is a corporate liquidation case. Informed analysis of trustee compensation, heretofore lacking in reported decisions, requires the type of evidence of their actual total fees identified here.

The motions were briefed and argued by the trustees and the U.S. trustee, who supported the trustees requests in full and in their contention that the § 330(a)(7) "commission" is rigid.

### Individual Cases

*In re Scoggins*, No. 12–42158, was filed December 31, 2012, as a no-asset case with a residence valued at $473,254, subject to a $523,339 first deed of trust and a $82,806 junior deed of trust. The trustee hired real estate professionals who were paid $28,568 and negotiated a $535,000 short sale with agreement of the secured creditors, with a "carve-out" for the estate of $26,750. The trustee wants a fee of $16,000, leaving $8,572 for unsecured priority and general claims—a 5 percent dividend.

*In re Ruelas*, No. 13–21100, was filed January 28, 2013, as a no-asset case with a residence valued at $223,000, subject to a $404,000 deed of trust. The trustee hired real estate professionals who were paid $11,400 and negotiated a $205,000 short sale with consent of the secured creditor, with a "carve-out" of $15,000. The trustee wants a fee of $9,000, leaving $5,784 for unsecured priority and general claims—a 32 percent dividend.

*In re Popescu*, No. 12–41237, was filed December 10, 2012, with a parcel of real estate valued at $550,000, subject to $588,750 in secured debt. The trustee, without marketing, received an offer of $665,000 for that property, which enabled a sale that netted the estate $58,945 once another secured creditor acquiesced in partial payment. The trustee hired a real estate professional who was paid $39,900 and wants a fee of $36,500, leaving $20,105 for unsecured priority (who will not be paid in full) and general claims—a 0 percent dividend.

### Business Case

*In re Dry–Mix Products Co., Inc.*, No 11–21956, was filed January 26, 2011, to liquidate a manufacturer and supplier of concrete and concrete products. The trustee marketed and sold multiple parcels of real estate, heavy transportation equipment, heavy equipment used in manufacturing, substantial inventory, accounts receivable, and other property characteristic of a million-dollar enterprise that had op-

erated for 60 years. In the end, $1,222,159 was realized. Secured claims ($414,651) and priority claims are paid in full. Professional expenses for an attorney and an accountant totaled $18,967. The trustee requests a fee of $59,915, leaving $498,284 for unsecured priority and general claims—a 47 percent dividend.

*Actual Chapter 7 Trustee Compensation*

Actual chapter 7 trustee compensation in 2013 in this district, based on public records maintained pursuant to Federal Rule of Bankruptcy Procedure 2013,[2] for the 28 panel trustees routinely assigned cases in 2013 by the U.S. trustee pursuant to 11 U.S.C. §§ 701(a) and 702(d) and 28 U.S.C. § 586 was as indicated in the following table.

Chapter 7   Trustee Compensation
Eastern District of California
2013

| Trustee | 11 U.S.C. § 330(b) Fees Awarded ($60) | 11 U.S.C. § 330(a) Fees Awarded | Total § 330 Awards |
|---|---|---|---|
| 1 | $33, 838.02 | $497, 626.02 | $531, 009.04 |
| 2 | 43, 695.41 | 439, 538.57 | 483, 233.98 |
| 3 | 57, 034.57 | 310, 658.90 | 367, 693.47 |
| 4 | 49, 684.30 | 296, 593.35 | 346, 277.65 |
| 5 | 49, 437.72 | 242, 543.54 | 291, 981.26 |
| 6 | 48, 669.87 | 207, 301.01 | 255, 970.88 |
| 7 | 55, 014.86 | 180, 714.89 | 235, 729.75 |
| 8 | 71, 482.64 | 161, 985.88 | 233, 468.52 |
| 9 | 53, 424.70 | 150, 414.31 | 203, 839.01 |
| 10 | 45, 511.77 | 121, 078.86 | 166, 590.63 |
| 11 | 50, 179.69 | 116, 342.33 | 166, 522.09 |
| 12 | 33, 450.68 | 132, 495.50 | 165, 946.18 |
| 13 | 43, 008.91 | 121, 091.80 | 164, 100.71 |
| 14 | 46, 351.26 | 114, 843.92 | 161, 195.18 |
| 15 | 53, 481.45 | 96, 689.88 | 150, 171.33 |
| 16 | 56, 239.10 | 92, 761.56 | 149, 000.66 |
| 17 | 53, 549.97 | 93, 840.59 | 147, 390.56 |
| 18 | 45, 295.29 | 87, 528.01 | 132, 823.30 |
| 19 | 47, 872.54 | 83, 714.11 | 131, 586.65 |
| 20 | 51, 126.65 | 76, 215.74 | 127, 342.39 |
| 21 | 47, 201.66 | 59, 978.90 | 107, 180.56 |
| 22 | 27, 180.00 | 91, 848.01 | 119, 028.01 |
| 23 | 34, 110.10 | 82, 979.03 | 117, 089.13 |
| 24 | 46, 814.40 | 39, 495.15 | 86, 309.55 |
| 25 | 46, 863.29 | 21, 868.90 | 68, 732.19 |
| 26 | 24, 322.91 | 39, 282.83 | 63, 605.74 |
| 27 | 30, 854.90 | 26, 580.71 | 57, 435.61 |
| 28 | 27, 303.92 | 11, 965.27 | 39, 269.19 |
| Total | $1,273, 000.58 | $4, 052,203.85 | $5, 325,204.43 |
| Average | 45, 464.30 | 144, 722.17 | 190, 185.87 |

**2.** Rule 2013(a) provides:

(a) Record To Be Kept. The clerk shall maintain a public record listing fees awarded by the court (1) to trustees and attorneys, accountants, appraisers, auctioneers and other professionals employed by trustees; and (2) to examiners. The record shall include the name and docket number of the case, the name of the individual or firm receiving the fee and the amount of the fee awarded. The record shall be maintained chronologically and shall be kept current and open to examination by the public without charge. "Trustees," as used in this rule, does not include debtors in possession.

Fed. R. Bankr.P.2013(a).

| Median | 47, 201.66 | 114, 843.92 | 161, 195.18 |

Ex. C to Decl. Wayne Blackwelder, Clerk, U.S. Bankruptcy Ct., E.D. Cal., *In re Scoggins,* No. 12–42158, Dkt. # 83.

Total chapter 7 trustee compensation for those 28 trustees in 2013 was $5,325,204.43, consisting of $4,052,203.85 as "reasonable compensation" per § 330(a) based on moneys paid to creditors, plus $1,273,000.58 as the trustee's § 330(b) $60.00 share of the filing fee (or pro rata share of a partially paid fee) in all cases, including no-asset cases.

Individualizing the totals, the average chapter 7 trustee received $190,185.87 in total compensation in 2013, consisting of $144,722.17 in § 330(a) asset-based "reasonable compensation" and $45,464.30 in § 330(b) filing fee payments.[3]

The percentiles of asset-based fee requests under § 330(a) for 2013 were:

| Percentile | Amount |
| --- | --- |
| 10 | $400 |
| 20 | $625 |
| 30 | $839 |
| 40 | $1,199 |
| 50 | $1,351 |
| 60 | $1,657 |
| 70 | $2,232 |
| 80 | $3,219 |
| 90 | $6,000 |
| 95 | $10,114 |
| 98 | $17,701 |
| 99 | $30,563 |
| 99.5 | $59,998 |

Ex. B to *id.*

Thus, only 10 percent of § 330(a) chapter 7 fee applications exceeded $6,000. Only 5 percent of requests exceeded $10,114.

### Jurisdiction

Federal subject-matter jurisdiction is founded on 28 U.S.C. § 1334. This matter concerning the administration of the estate is a core proceeding that a bankruptcy judge may hear and determine. 28 U.S.C. § 157(b)(2)(A). To the extent it may ever be determined to be a matter a bankruptcy judge may not hear and determine without consent, the parties nevertheless consent to such determination by a bankruptcy judge. 28 U.S.C. § 157(c)(2).

### Discussion

Discerning why a naked "exceptional circumstances" standard means little without a method to winnow the "exceptional" fee request from the chaff begins with the relevant provisions of §§ 326(a) and 330. Conflicting lines of interpretation will be addressed in search of synthesis and a workable test, as well as a procedure for screening trustee compensation requests.

### I

In this statutory construction exercise, one begins with the precise terms of Bankruptcy Code §§ 326(a) and 330(a)-(b).

### A

The following statutes applicable to compensation for chapter 7 trustees must be harmonized.

§ 326. *Limitation on compensation of trustee*

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services payable after the trustee renders such services, *not to exceed* 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any

---

**3.** The medians are total compensation of $161,195.18, consisting of § 330(a) asset-based "reasonable" compensation of $114,843.92 and $47,201.66 in § 330(b) filing fee payments.

amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation *not to exceed* 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a) (emphasis supplied).

§ 330. *Compensation of officers*

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, ... the court may award to a trustee ... —

(A) reasonable compensation for actual, necessary services rendered by the trustee ... and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion ... award compensation that is less than the amount of compensation that is requested.

... [ (a)(3) omitted]

(4)(A) ... the court shall not allow compensation for—

(I) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case

.... [ (a)(5) and (6) omitted]

(7) In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.

11 U.S.C. § 330(a).

The § 330(b) $60 allocation of the filing fee stands apart from the fray.[4] The trustee receives $60 from a fully-paid filing fee and a pro rata share of a partially-paid filing fee.

**B**

The critical rule for construing these provisions is the requirement that courts give effect insofar as possible to all words of a statute. *E.g., Corley v. United States,* 556 U.S. 303, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (construe statute "so that no part will be inoperative or superfluous, void or insignificant"). This is crucial where, as here, an interconnected statute creates a seamless web.

**II**

The basic question is how one honors the requirement, added in 2005, that in determining reasonable compensation for a trustee the court "treat" compensation as a "commission" in the face of other seemingly inconsistent provisions.

**A**

The difficulty of construing what it means to "treat" trustee compensation as a "commission, based on section 326" as provided in § 330(a)(7) is evident from the other provisions that apply to chapter 7 trustee compensation.

First, trustee compensation must be "reasonable" and for "actual, necessary services rendered." 11 U.S.C. § 330(a)(1).

---

**4.** That provision is:

(b)(1) There shall be paid from the filing fee in a case under chapter 7 of this title $45 to the trustee serving in such case, after such trustee's services are rendered [and]

(2) $15 to trustees serving in cases ... such $15 shall be paid in addition to the amount paid under paragraph (1).

11 U.S.C. § 330(b).

Second, the court is authorized "on its own motion" to "award compensation that is less than the amount of compensation that is requested" by a trustee. 11 U.S.C. § 330(a)(2).

Third, the court is prohibited from allowing trustee compensation for "unnecessary duplication of services" and for services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A).

Fourth, § 326(a) is plain, by virtue of the qualifier "not to exceed," that its formula fixes a ceiling on compensation. That it was not being amended in 2005 concurrent with enactment of the § 330(a)(7) "treat"-as-"commission" provision suggests that "not to exceed" provisions retain vitality. Its legislative history is unambiguous that the tendency under prior law to treat the ceiling as the floor was being disapproved.[5] Viewing the "commission" as inflexible requires a conclusion that § 326 was implicitly amended by the addition of § 330(a)(7) in 2005.

Fifth, the language of § 330(a)(7) stating that the court shall "treat" trustee compensation as a "commission" is too ambiguous to be plain. Even if "commission" were to have a fixed meaning (it does not), the word "treat" equates with "regard," is less than mandatory, and does not dictate a result.

A final complication regarding the § 330(a)(7) provision to "treat" trustee "compensation as a commission" is that it applies to all trustees, but chapter 11 trustees are also subject to the lodestar-type scrutiny dictated by § 330(a)(3). This wrinkle makes it hard to achieve the same meaning of § 330(a)(7) for chapter 7 trustees and chapter 11 trustees. Surely, § 330(a)(7) does not have different meanings for different trustees.

## B

The conventional understanding of the effect of the § 330(a)(7) "commission" provision is that in the majority of cases the chapter 7 trustee's compensation will presumptively be the § 326(a) formula. 3 COLLIER ON BANKRUPTCY ¶ 330.02[1][a] (16th ed. Alan N. Resnick & Henry J. Sommer, eds. 2013) ("COLLIER").

Nevertheless, as the *Collier* treatise points out, the effect of the "commission" provision is no more than a presumption, because § 330(a)(7) does not override the separate requirements that trustee compensation be "reasonable" and that services be "actual and necessary." 11 U.S.C. § 330(a)(1)(A). Nor does it override prohibitions on compensation for "unnecessary duplication of services" or services "not reasonably likely to benefit" the estate or not "necessary to the administration of the case." 11 U.S.C. § 330(a)(4). Finally, it does not override a court's authority to award "less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2). Thus, courts continue to test the reasonableness of a trustee's fee and to ensure there is not compensa-

---

**5.** In the enactment of § 326(a), which has never been amended, the House and Senate Judiciary Committees explained:

... This section simply fixes the maximum compensation of a trustee. Proposed 11 U.S.C. section 330 authorizes and fixes the standard of compensation. Under section 48c of current law, the maximum limits have tended to become minimums in many cases. This section is not intended to be so interpreted. The limits in this section, together with the limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified.

House Report No. 95–595, 95th Cong., 1st Sess. 327 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 37 (1978).

tion for prohibited services. 3 COLLIER at ¶ 330.02[1][a].

A persuasive trial court analysis for the view that the § 330(a)(7) "commission" provision creates a presumption is *In re McKinney,* 383 B.R. 490, 494 (Bankr. N.D.Cal.2008), *cited with approval,* 3 COLLIER 330.02[1][a].

Under the *McKinney* analysis, reasonableness is determined "with an eye on the statutory cap." The § 330(a)(7) "commission" provision operates as a presumption that the statutory maximum is "reasonable" compensation. The court, on review of the materials supporting a fee application and other relevant facts and circumstances, will award the statutory maximum if that sum is not substantially disproportionate to the value of the services required from the trustee. If the court determines that the statutory maximum is substantially disproportionate, the court should award as a "reasonable" commission the maximum that is not substantially disproportionate to the value of the trustee's services. *McKinney,* 383 B.R. at 494.

Another commentator endorsing the *McKinney* approach suggests that the disproportion analysis be refined so that the statutory maximum would be paid if it is "not unreasonably disproportionate" in a general sense, without reference to the value of the trustee's services, and that "extraordinary" circumstances may occasion a determination of unreasonable disproportion. John Silas Hopkins, III, *Effective Review of Compensation in Large Bankruptcy Cases,* 88 AM. BANKR. L.J. 127, 141 (2014) (*"Effective Review"*).

The notion of unreasonable disproportion in the general sense has some appeal so long as it is understood that the value of the trustee's services are nevertheless relevant, but not necessarily essential, to the question of unreasonable disproportion. Circumstances independent of the value of the trustee's services might lead to unreasonable disproportion.

### C

Two appellate courts have recently taken what is contended to be a more stringent view of the § 330(a)(7) "commission" than the approach in the *Collier* treatise and in *McKinney,* holding that in chapter 7 cases the court must determine the § 330(a)(7) "commission" and then decide whether "extraordinary circumstances" exist that make unreasonable the presumptively reasonable commission before reducing any chapter 7 fee request.

The "extraordinary circumstance" tangent started with the Ninth Circuit BAP decision in *Salgado–Nava,* which the Fourth Circuit relied on in *In re Rowe,* 750 F.3d 392 (4th Cir.2014).

Both *Salgado–Nava* and *Rowe* departed from a key norm of the adversary system. Each was a non-adversarial appeal by a chapter 7 trustee supported by the National Association of Bankruptcy Trustees and by the U.S. trustee as amicus curiae advocating a rigid "commission" approach. Although the Fourth Circuit appointed an academic to argue the other side, neither case had a bona fide appellee with an economic stake in the outcome.

### 1

In *Salgado–Nava,* the chapter 7 trustee appealed the court's $561.41 reduction of a $1,315.41 "commission."

#### a

The BAP panel undertook to harmonize § 330(a)(7) with §§ 326(a) and 330. Recognizing that § 330(a)(3), prescribing five lodestar-type factors pertinent to "reasonable" compensation, expressly applies to chapter 11 trustees (but not chapter 7

trustees), it gave up [6] after searching fruitlessly for a unified meaning for § 330(a)(7) that could be applied in all chapters. *Salgado–Nava*, 473 B.R. at 919–21.

Ultimately, the BAP panel concluded that "absent extraordinary circumstances, chapter 7, 12, and 13 trustee fees should be presumed reasonable if they are requested at the statutory ['commission'] rate." *Salgado–Nava*, 473 B.R. at 921.

But, if "extraordinary" circumstances exist, the bankruptcy court may "determine whether there exists a rational relationship between the amount of the commission and the type and level of services rendered," *Salgado–Nava*, 473 B.R. at 921. At that juncture, "the bankruptcy court's examination of the relationship between the commission rate and the services rendered may, but need not necessarily include, the § 330(a)(3) factors and a lodestar analysis." *Id.*

It is ironic that, while saying that it was rejecting the analysis of *McKinney* and of the *Collier* treatise, the BAP panel's purported harmonization winds up focusing on whether there is a rational relationship between the duties to be compensated by the commission rate and the nature and range of services actually provided. *Salgado–Nava*, 473 B.R. at 920–21. This is essentially the same as the *McKinney* inquiry, endorsed in the *Collier* treatise, focusing on whether the commission rate is unreasonably disproportionate to the value of the trustee's services. *McKinney*, 383 B.R. at 494. The difference is that *Collier* and *McKinney* view § 330(a)(7) as a presumption that the fee is "reasonable," while the addition of "extraordinary" in *Salgado–Nava* could elevate the presumption to a more exalted status.

The BAP panel sowed seeds of confusion when it ducked the question of what might constitute "extraordinary" circumstances: "We thus leave for another day the issue of what facts might qualify as extraordinary for purposes of activating the bankruptcy court's duty to determine the reasonableness of § 326(a) commission rates." *Salgado–Nava*, 473 B.R. at 922 n. 16. The appeal involved a garden-variety $1,315 fee request; would the BAP have regarded a $13,000 fee request as "extraordinary?"

The only holding in *Salgado–Nava* that is useful for purposes of judicial administration—"extraordinary" having been, left to case-by-case development—is: "Simply put, a bankruptcy court that diminishes a trustee's compensation from the statutorily-set rate errs if the only basis offered for this diminution is a lodestar analysis." *Salgado–Nava*, 473 B.R. at 921. That holding leaves much unresolved.

b

There are other reasons for caution about reading too much into *Salgado–Nava*.

The BAP panel says that it is applying the time-honored canon of construction that each word is being given meaning and that no part is being rendered inoperative, superfluous, void, or insignificant. *Salgado–Nava*, 473 B.R. at 917–18. But then it proceeds to ignore § 330(a)(1) requiring that compensation be "reasonable" and based on actual, necessary services, to ignore § 330(a)(2) authorizing the court to award less than the amount that is requested, and to ignore § 330(a)(4) prohibiting compensation for unnecessary duplication of services. "We thus leave for another day the issue of

---

**6.** The BAP's harmonized rule required an exception for chapter 11 cases: "In the case of a chapter 11 trustee, this determination necessarily requires consideration of the § 330(a)(3) factors, and also requires a lodestar analysis." *Salgado–Nava*, 473 B.R. at 921.

what facts might qualify as extraordinary for purposes of activating the bankruptcy court's duty to determine the reasonableness of § 326(a) commission rates." *Salgado–Nava*, 473 B.R. at 922 n. 16. The appeal involved a garden-variety $1,315 fee request; would the BAP have regarded a $13,000 fee request as "extraordinary?"

The only holding in *Salgado–Nava* that is useful for purposes of judicial administration—"extraordinary" having been left to case-by-case development—is: "Simply put, a bankruptcy court that diminishes a trustee's compensation from the statutorily-set rate errs if the *only* basis offered for this diminution is a lodestar analysis." *Salgado–Nava*, 473 B.R. at 921 (emphasis supplied). That holding leaves much unresolved.

### c

There are other reasons for caution about reading too much into *Salgado–Nava*.

The BAP panel says that it is applying the time-honored canon of construction that each word is being given meaning and that no part is being rendered inoperative, superfluous, void, or insignificant. *Salgado–Nava*, 473 B.R. at 917–18. But then it proceeds to ignore § 330(a)(1) requiring that compensation be "reasonable" and based on actual, necessary services, to ignore § 330(a)(2) authorizing the court to award less than the amount that is requested, and to ignore § 330(a)(4) prohibiting compensation for unnecessary duplication of services.

There is no explanation why ignoring §§ 330(a)(1), (a)(2), and (a)(4), all of which apply to trustee compensation, does not render them inoperative, superfluous, void, or insignificant.

In a decision that pledges fidelity to every word of the statute, it is odd that a word that is not in the statute—"extraordinary"—assumes such a prominent position in the BAP's decision. As between § 326 and § 330(a), the word "reasonable" appears seven times regarding trustee compensation, but "extraordinary" is purely extra-statutory. It follows that it is not ineluctable that "extraordinary" applies to § 330(a)(7).

The source of the "extraordinary circumstances" gloss is the U.S. trustee program, which appears to have made it up out of whole cloth. Without referring to any statute or other authority, the U.S. trustee program announced that it would not object to maximum commissions for chapter 7 trustees except in "extraordinary circumstances" that it "expected to arise only in rare and unusual circumstances." U.S. Trustee, HANDBOOK FOR CHAPTER 7 TRUSTEES, ch. 2–1 at 39 ("U.S. Trustee HANDBOOK"); *Rowe*, 750 F.3d at 397; *Salgado–Nava*, 473 B.R. at 922 n. 16.

This is merely the U.S. trustee's statement of policy issued without rulemaking authority and lacks force of law. It is an announcement that the U.S. trustee, except in "extraordinary" circumstances that can be as rare as the U.S. trustee pleases, will focus attention elsewhere and leave chapter 7 trustee compensation to parties and the courts.

### 2

*Rowe* was not quite the victory that the trustees and the U.S. trustee now proclaim.

In *Rowe*, the Fourth Circuit filled one of the gaps in the *Salgado–Nava* analysis by taking § 330(a)(2) into account. Focusing on the relation between the § 330(a)(2) power to award a reduced fee and the § 330(a)(7) "commission" provision, it held that "§ 330(a)(7) creates a presumption, but not a right, to a statutory maximum commission-based fee for chapter 7 trus-

tees." *Rowe*, 750 F.3d at 398. It further ruled that the starting point for deciding chapter 7 trustee compensation is always the commission rate to which the trustee normally would be entitled if no extraordinary Circumstances existed. *Id.*

The Fourth Circuit reasoned that § 330(a)(2) permits awarding less than the § 330(a)(7) commission: "it strains the bounds of credulity to think that Congress would have thought those [§ 326] rates to be reasonable—or meant for Chapter 7 trustees to receive those rates—when extraordinary circumstances are present." *Rowe*, 750 F.3d at 398.

Accordingly, it remanded to the bankruptcy court to apply the correct analysis: start with the commission rate and then determine whether and why "extraordinary" circumstances exist. If reducing the fee, there must be "findings of fact explaining the 'rational relationship between the amount of the commission and the type and level of services rendered.'" *Rowe*, 750 F.3d at 399, *quoting Salgado–Nava*, 473 B.R. at 921.

As with *Salgado–Nava*, the *Rowe* analysis is remarkably similar to that of *McKinney* according to which § 330(a)(7) "creates a presumption that the statutory maximum is reasonable compensation" and would reduce the fee if the court, after reviewing time records and all other relevant facts and circumstances, determines that "the statutory maximum is substantially disproportionate to the value of the trustee's services." *McKinney*, 383 B.R. at 494.

While the Fourth Circuit, unlike the BAP, grappled with the implications of the continuing applicability of § 330(a)(1) (reasonable compensation for actual, necessary services) and § 330(a)(2) (court may award less than amount requested) and reached a plausible harmonization, it ignored § 330(a)(4) (no compensation for unnecessary duplication of services), which also applies to chapter 7 trustee compensation.

And the Fourth Circuit, although pledging allegiance to the "plain language" of the statute, uncritically accepted the *Salgado–Nava* addition to § 330(a)(7) of the word "extraordinary" as the trigger for implementing a § 330(a)(2) fee reduction.

As to the meaning of "extraordinary" circumstances, the Fourth Circuit, taking no position on the merits, ruled: (1) bankruptcy courts determine what is "extraordinary" on a case-by-case basis; and (2) reducing a fee needs to be supported by detailed findings of fact explaining the rational relationship between the commission and the type and level of services rendered. *Rowe*, 750 F.3d at 397 & 399. This emphasis on findings of fact appears to presage a deferential appellate review of the bankruptcy court's eventual findings.

Although intimating no view, the Fourth Circuit listed versions of "extraordinary" urged by the parties as if all were plausible: inadequate or negligent performance; substandard case administration; and delegation of trustee duties to an attorney or other professional. These, and others, would be before the bankruptcy court on remand. *Rowe*, 750 F.3d at 397.

In the end, *Rowe* seems to stand for the proposition that § 330(a)(7) creates a presumption, but not a right, to a statutory maximum commission-based fee for chapter 7 trustees that can be rebutted on a case-by-case basis in a decision that contains detailed findings explaining a rational relationship between the award and the type and level of services rendered.

### 3

Taken together, *Salgado–Nava* and *Rowe*, like *McKinney*, teach that there is a perhaps strong, but rebuttable, presumption that. the maximum compensation permitted by § 326(a) is "reasonable." Hop-

kins, *Effective Review,* 88 AM. BANKR. L.J. at 138–39.

## D

The procedural task, regardless of whether courts start with the formalistic two-step "commission"-plus-"extraordinary"-circumstances analysis or merely apply a presumption that a "commission" is reasonable and not to be reduced without justification, is how to identify the situations that warrant reductions pursuant to § 330(a)(2) in order to achieve a fee that is "reasonable" for purposes of § 330 and § 330(a)(1)(A).

### 1

The key question in an "extraordinary" circumstances jurisdiction is: what constitutes an "extraordinary" circumstance? Seven examples suggest themselves.

The trustees in *Salgado–Nava* and in *Rowe* (and the trustees here) concede that "extraordinary" circumstances exist when: (1) case administration falls below acceptable standards; and (2) trustee duties are delegated to an attorney or other professional. U.S. Trustee HANDBOOK, ch. 2–1 at 39; *Rowe,* 750 F.3d at 397; *Salgado–Nava,* 473 B.R. at 922 n. 16.

A third category of "extraordinary" circumstances also comes from the U.S. Trustee HANDBOOK: (3) trustee fees greater than the amount left for unsecured claims. U.S. Trustee HANDBOOK, ch. 7 at 4–1 ("A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals").

Other situations in which maximum commissions might not be "reasonable" compensation are suggested by the *Collier* treatise. The "moneys disbursed" (the § 326(a) basis for commission percentages) might sometimes be high in relation to trustee services performed. Examples include, (4) a case filed with a lot of cash or liquid assets, (5) a case in which the trustee operates the business, and (6) cases in which there are significant disbursements without proportionate effort by the trustee. All of these may lead to a maximum commission so high as to be not reasonable. 3 COLLIER ¶ 330.02[1][a].

A maximum commission on a sale in which the trustee merely assumes and completes a sale contract that was executed before bankruptcy may exceed reasonable compensation: "extraordinary." *McKinney,* 383 B.R. at 492.

Seventh, (7) artificial inflation of the estate by way of "carve-out" or "short sale." Usually, over-encumbered property is abandoned as of inconsequential value and benefit to the estate. 11 U.S.C. § 554. An undersecured creditor facing the time and expense of enforcing rights under non-bankruptcy law may prefer to accept less than its claim in exchange for a prompt sale by the trustee and is willing to pay, i.e., "carve-out," a premium for the estate for that service in liquidating the collateral. *KVN Corp.,* 514 B.R. at 5.

Two of the instant cases have "carve-outs" that are the sole source of funds in those cases. The trustee, supported by the U.S. trustee, wants commissions measured on the amount paid to the secured creditor to whom the property would otherwise have been abandoned, rather than measured on the net "carve-out" the estate received. On this theory, for example, a $1,000,000 short sale with a "carve-out" of $53,250 to the estate would entitle the trustee to a maximum commission of $53,250, leaving nothing for unsecured claims.

Not only is it doubtful that such a high fee is "reasonable" compensation under any analysis, permitting the trustee to appropriate the lion's share of available funds offends the U.S. trustee's "fundamental

principle" that "a trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee." U.S. Trustee HANDBOOK, ch. 7 at 4–1. The U.S. trustee's renunciation of its "fundamental principle" that is implicit in its support of the present trustee motions is a mystery.

### 2

All this leads to a conclusion that "extraordinary" circumstances is merely a label without analytic content.[7] One must dig deeper for something more substantial that gives content to "extraordinary" circumstances.

The Ninth Circuit has noted that the phrase "extraordinary circumstances" in connection with bankruptcy fees is inherently ambiguous and vulnerable to misinterpretation, with meanings ranging from extremely unusual circumstances to "out-of-the-ordinary" or "atypical" or "extraordinary." *Law Offices of David A. Boone v. Derham–Burk (In re Eliapo)*, 468 F.3d 592, 601 (9th Cir.2006). In context and in view of the number of potential examples, it is apparent that "extraordinary" as used in *Salgado–Nava* and *Rowe* means "out-of-the-ordinary" or "atypical" but not "rare and unusual."

As one searches for a general principle underlying all of the proposed standards, including "extraordinary" circumstances, one keeps coming back to the *McKinney* formulation: whether the fee is substantially disproportionate—either in a general sense or in relation to the value of the trustee's services.

The analysis of whether a trustee's fee is substantially disproportionate provides operational guidance to what is required to overcome the presumption in favor of the

§ 330(a)(7) commission. Under such an analysis, for example, a trustee fee greater than distributions to unsecured priority and general claims in violation of what the U.S. trustee describes as a "fundamental principle" could be viewed as substantially disproportionate and an "extraordinary" circumstance.

### III

It is difficult to appreciate the gravamen of the trustees' "extraordinary circumstances" argument without a comprehensive view of all facets of chapter 7 trustee compensation.

### A

The trustees' compensation argument depends on context but they exploit the fallacy of the illicit major by arguing out of context with a narrow focus on only a segment of compensation.

The context matters because there is an interplay that necessarily implicates total compensation. While it is axiomatic that chapter 7 trustee compensation for no-asset cases ($60 per case under § 330(b)) was never intended to be "reasonable" compensation for no-asset cases, Congress designed compensation for asset cases under § 330(a) to be sufficiently generous so as to fill the gap by subsidizing no-asset cases.[8]

The theory is that the U.S. trustee, who selects, assigns, and supervises trustees, will assign a portfolio of asset and no-asset cases that will on average reasonably compensate a trustee.

### 1

When trustees argue that they are not reasonably compensated without the full

---

7. *Cf.*, H.C. ANDERSEN, *The Emperor's New Clothes*, FAIRY TALES TOLD FOR CHILDREN (1837).

8. A typical statement of the subsidy argument is: Hopkins, *Effective Review*, 88 AM. BANKR. L.R. at 143–44 & n. 92.

§ 330(a)(7) "commission" in virtually every asset case, they open the door to the question of what is their total compensation. But they argue fallaciously by snippet.

The argument proceeds as follows. First, it is said that § 330(b) compensation of $60 per case has been fixed since 1994. Second, it is said that fee waivers cause loss of some of that § 330(b) income. Third, it is noted (correctly) that § 330(a) fee income in asset cases is intended to subsidize no-asset cases, the source of which subsidy is overcompensation in the asset cases. The argument concludes that the court, except in "rare and unusual" and "extraordinary" circumstances, must slavishly award maximum commissions in chapter 7 cases. U.S. Trustee, HANDBOOK FOR CHAPTER 7 TRUSTEES, ch. 2–1 at 39.

The first snippet is misleading. While it is correct that the $60 fixed fee under § 330(b) has not been adjusted since 1994, there is no disclosure that the fixed fee provides only 25. percent of current trustee compensation or that the remaining 75 percent comes from § 330(a) asset-based fees that have always been de facto indexed for inflation. Asset-based fees are stated as a percentage of realized value, which a fortiori incorporate inflation. Thus, at most, the relative proportion of § 330(b) $60 fees in total trustee compensation diminishes over time without impairing "reasonable" compensation. Tail wags dog.

But the main flaw in the trustees' argument is that it proves too much. It is one thing to say that the basic § 330(a)(7) "commission" is designed to subsidize the no-asset cases without offending the § 330(a)(1) requirement that the fee be "reasonable." It is quite another thing to say, as the trustees and the U.S. trustee contend, that every § 330(a)(7) commission, even (for example) on artificially inflated estates, is reasonable compensation.

Nor is there consideration on the extent to which the $60 § 330(b) fixed fee is actually inadequate. The actual § 330(b) payments' to trustees in this district was $47,201.66. That is a substantial contribution towards compensation in no-asset cases, the majority of which cases require less than one hour for a trustee with a computer to administer start-to-finish.

The reality is that the justification for the subsidization feature of trustee compensation—that generous fees in asset cases are needed to balance out inadequate compensation for no-asset cases in order to achieve the goal of overall "reasonable" compensation—is, at best, an "uneasy" case.

The more a chapter 7 trustee receives in § 330(a)(7) "commissions" in asset cases, the less the need for further subsidy of the no-asset cases. At some point, the trustee will have received full "reasonable" compensation for the uncompensated portion of the time needed to deal with no-asset cases. Beyond that point, the case for further subsidy becomes untenable because it comes at the expense of unsecured claims. That point is capable of measurement.

2

Congress, in a related context heretofore ignored in reported cases, has decreed what constitutes full "reasonable" § 330(a) trustee compensation for one category of trustee.

Section 330(a) applies to trustees in all chapters, not merely chapter 7 and 11 trustees. And § 330(c) addresses monthly distributions to chapter 12 and 13 trustees during administration of a plan. 11 U.S.C. § 330(c).

The obscurity of § 330 in the context of chapter 12 and chapter 13 trustee compensation occurs because § 330 is eclipsed by separate Judicial Code provisions prescribing standing trustee compensation at 28

U.S.C. § 586(e). If the number of cases warrant, the U.S. trustee may appoint standing chapter 12 and 13 trustees. 28 U.S.C. § 586(b). But if there is not a standing trustee, then 28 U.S.C. § 586(e) does not apply and § 330 is the sole source for compensating a trustee in chapter 12 or 13 case.

Congress decreed the maximum annual compensation for standing trustees under chapters 12 and 13 as not to exceed the highest annual rate of basic pay in effect for level V of the Executive Schedule, plus the cash value of employment benefits provided by the United States to level V employees as fixed by the Attorney General, plus actual, necessary expenses incurred by such trustee as standing trustee. 28 U.S.C. § 586(e)(1)(A).[9]

Chapter 13 trustee compensation is $206,102 as of October 1, 2014, consisting of $147,200 (Executive Schedule level V), plus $58,902 fixed as cash equivalent of benefits.

The source of payment is percentage fees dictated by 11 U.S.C. § 586(e)(1)(B), which collections are used to fund trustee compensation and actual, necessary expenses, with the surplus deposited in the U.S. trustee System Fund to finance the U.S. trustee program. 28 U.S.C. §§ 586(e)(2) & 589a.

Thus, Congress contemplates that full "reasonable" compensation of standing trustees appointed under 28 U.S.C. § 586(b) is $206,102, net of expenses. In a district in which a standing trustee is not available to serve, the compensation limits of standing trustees elsewhere informs the meaning of "reasonable" trustee compensation under § 330(a) for a chapter 13 trustee who is not a standing trustee.

By extension, the view of Congress also informs the meaning of full "reasonable" compensation for chapter 7 trustees.[10]

3

Since evidence of actual total trustee compensation is a missing link in the records of *Salgado–Nava* and *Rowe,* such evidence is part of the record here.

The average chapter 7 trustee in this district received $190,185.87 in total compensation in 2013, consisting of $144,722.17 in § 330(a) asset-based "reasonable compensation" and $45,464.30 in § 330(b) filing fee payments.[11] Proportionally, 76 percent

---

9. The relevant portion of the statute is:

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—
(A) a maximum annual compensation for such individual consisting of—
(i) an amount not to exceed the highest annual rate of basic pay in effect for level V of the Executive Schedule; and
(ii) the cash value of employment benefits comparable to the employment benefits provided by the United States to individuals who are employed by the United States at the same rate of basic pay to perform similar services during the same period of time; and

(B) [payment source omitted] and the actual, necessary expenses incurred by such individual as standing trustee.
28 U.S.C. § 586(e)(1).

10. To be sure, the analogy is imperfect. Chapter 7 trustees have overhead expenses that standing trustees recapture as actual, necessary expenses. 28 U.S.C. § 586(e)(1)(B). The burden, however, is on the chapter 7 trustees to demonstrate what overhead they have that might warrant an upward adjustment that would rebut the presumption associated with the chapter 12/13 standing trustee income limit. Some have little overhead; others have more. Actual numbers will be important to persuasion.

11. Curiously, the U.S. trustee resisted disclosing this information in this case as if there is something to hide.

came from assets and 24 percent from filing fees.

## IV

Courts have an independent duty to review fee applications under § 330. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir.1994), *cited with approval, Eliapo*, 468 F.3d at 602–03; *Law Offices of David A. Boone v. Derham–Burk (In re Eliapo)*, 298 B.R. 392, 402 (9th Cir. BAP 2003), *aff'd in relevant part, Eliapo*, 468 F.3d at 604. The fee applicant has the burden of proof on the merits and bears the correlative risk of non-persuasion. *In re Gianulias*, 111 B.R. 867, 869 (E.D.Cal. 1989).

### A

In an ideal world, creditors and the U.S. trustee would exploit the genius of the adversary system by objecting to fees that exceed "reasonable" amounts.

But in the real world, chapter 7 trustee fee applications have no natural enemies. Creditors rarely object because the cost of monitoring and objecting exceeds the likely payoff.

While the U.S. trustee has a duty to monitor, comment, and object to fees,[12] it does not do its duty. From January 1, 2012, through June 30, 2014, there were 62,045 chapter 7 cases filed in this district; the U.S. trustee filed zero "comments" or "oppositions" to chapter 7 trustee fees during that period.

One may ask what is the harm in a disproportionate trustee or professional fee if nobody objects? The harm is the loss of public confidence in the integrity of the bankruptcy system if it comes to be regarded as managed primarily for the benefit of those who operate it.[13]

---

When directed to obtain and file a declaration from the Clerk of Court identifying the § 330(a)(7) and § 330(b) fees awarded to chapter 7 trustees in 2013 in this district, the U.S. trustee redacted *all* the fee amounts. As announced in open court, this court has caused an unredacted copy to be filed.

The U.S. trustee's excuse for its passive aggression was that the information "is sensitive information that, as a matter of practice, the U.S. trustee program does not make public, and which may be subject to the provisions of the Privacy Act of 1974, 5 U.S.C. § 552a." U.S. Trustee's Response to Court's Order of May 18, 2014. The excuse lacks merit. This is information required by Rule 2013 to be maintained and made available to the public (see note 2 supra) and, hence, is neither "sensitive," nor "subject to the provisions of the Privacy Act."

Rule 2013 makes clear that public policy favors sunshine.

**12.** The relevant duty is:
 (a) Each United States trustee, within the region for which such United States trustee is appointed, shall—
  . . .
 (3) supervise the administration of cases and trustees in cases under chapter 7, 11,
12, 13, or 15 of title 11 by, whenever the United States trustee considers it to be appropriate—
  (A)(i) reviewing, in accordance with procedural guidelines adopted by the Executive Office of the United States Trustee (which guidelines shall be applied uniformly by the United States trustee except when circumstances warrant different treatment), applications filed for compensation and reimbursement under section 330 of title 11; and
  (ii) filing with the court comments with respect to such application and, if the United States Trustee considers it to be appropriate, objections to such application.
28 U.S.C. § 586(a)(3)(A).

**13.** *Cf.*, R.R. Palmer, A HISTORY OF THE MODERN WORLD, at 44 (Knopf 1963) ("The [14th Century] church faced the danger that besets every successful institution—a form of government, an army or navy, a business corporation, a labor union, a university, to choose modern examples—the danger of believing that the institution exists for the benefit of those who conduct its affairs.").

## B

In the absence of help from creditors and the U.S. trustee, courts need screening procedures to sort wheat from chaff. The logical strategy is to require that there be detailed fee applications supported by time records and narrative statement of service (as opposed to short-form applications) for categories of cases that are more likely than others to entail "extraordinary" circumstances. The following categories suggest themselves. A judge, of course, may also require a formal fee application in any given case not in those categories.

### 1

First, since the highest fee requests present the greatest risk of exceeding "reasonable" compensation under § 330(a) by being substantially disproportionate—hence, "extraordinary"—to what the trustee was required to do, they warrant the scrutiny of a formal fee application. As a line needs to-be drawn for convenience of administration, an appropriate level is $10,000, which marks the top 5 percent of fee requests in this district. Since only about 10 percent of cases are asset cases, this category actually applies to .5 percent of chapter 7 cases.

### 2

The second category comes as a "fundamental principle" from the *U.S. Trustee Handbook:*

A chapter 7 case must be administered to maximize and expedite dividends to creditors. *A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will*

*primarily benefit the trustee* or the professionals, or unduly delay the resolution of the case. The trustee must be guided by this *fundamental principle* when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. § 586.

U.S. Trustee HANDBOOK, ch.7 page 4–1 (emphasis supplied).

As the BAP recently held in *KVN Corp.* in the context of a "carve-out" agreement, sales of fully encumbered assets are generally inappropriate but there is no per se rule against a sale of such assets with a "carve-out" agreement. *KVN Corp.* 514 B.R. at 5. Rather, there is a rebuttable presumption of impropriety based on history of abuses of "carve-out" agreements. *Id.* at 7–8.

The presumption of impropriety in the sale of a fully encumbered asset with a "carve-out" agreement can be rebutted by a combination of: (1) trustee performance of basic duties; (2) full disclosure; and (3) benefit to the estate, typically measured by "meaningful" distribution to unsecured claims.

The *U.S. Trustee Handbook* provides guidance emphasizing the importance of "meaningful" distribution to creditors other than the holders of the liens when selling over-encumbered assets. U.S. Trustee HANDBOOK, ch.7 page 4–14, *cited by KVN Corp.,* 514 B.R. at 7.[14]

---

**14.** The *U.S. Trustee Handbook* provides:

A trustee may sell assets only if the sale will result in a meaningful distribution to creditors. In evaluating whether an asset has equity, the trustee must determine whether there are valid liens against the asset and whether the value of the asset exceed the liens. The trustee may seek a "carve-out" from a secured creditor and sell the property at issue if the "carve-out" will result in a meaningful distribution to creditors.... If the sale will not result in a meaningful distribution to creditors, the trustee must abandon the asset.

And the U.S. trustee provides guidance about what amounts to a "meaningful" distribution: "A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will *primarily benefit* the trustee or the professionals." U.S. Trustee HANDBOOK, ch.7 page 4–1 (emphasis supplied).

It is beyond cavil that a trustee is "primarily" benefitted when the trustee's fee exceeds the funds that would be available to pay unsecured priority and general claims. It might, of course, also be the fact that, in any given case, a trustee fee that is less than the amount remaining available for unsecured claims might also "primarily" benefit the trustee.

This distills to a proposition that there is a rebuttable presumption that a § 330(a)(7) trustee "commission" exceeding the proposed payout to unsecured priority and general claims "primarily" benefits the trustee and does not leave enough for a "meaningful" distribution. The court, without more explanation, would be justified in invoking § 330(a)(2) as an "extraordinary" circumstance when determining a "reasonable" fee.

In other circumstances in which the court perceives a lack of "meaningful" distribution, the court would need to explain itself with specific findings because a "meaningful" distribution to creditors is, in the end, a question of fact for the court to determine. *KVN Corp.*, 514 B.R. at 8.

It warrants note that the BAP's decision in *KVN Corp.* is not inconsistent with its decision in *Salgado–Nava.* The author of *KVN Corp.* was a member of the *Salgado–Nava* panel and, hence, is one of the three people most knowledgeable about what *Salgado–Nava* means. *KVN Corp.* provides an instructive gloss on *Salgado–Nava* by noting that, if the sale is approved on remand, then the court "may consider the appropriate fee at a hearing on compensation." *KVN Corp.*, 514 B.R. at 9 n. 4.

As note 4 to *KVN Corp.* would be nonsense if the § .330(a)(7) "commission" is as apodictic as the trustees and U.S. trustee argue, it follows that the BAP regards the lack of a "meaningful" distribution, in the absence of evidence from the trustee rebutting the presumption, as a *Salgado–Nava* "extraordinary" circumstance potentially warranting a § 330(a)(2) departure from the § 330(a)(7) "commission." [15]

### 3

Third, a risk of overreaching applies to situations in which the estate is either artificially increased or is outsized compared to the standard mold. For example, when the trustee operates the business of the debtor, the "money disbursed" criterion of § 326(a) would reflect gross revenues and, especially for a high volume, low margin business, might result in a commission that is not "reasonable." This category also overlaps the second category in the context of "carve-out."

The appropriate method of scrutiny is the examination of detailed fee applications (in lieu of short-form applications) backed by time records and narrative statement of services.

That examination will enable the court to determine whether the presumption in favor of a § 330(a)(7) commission is rebut-

---

U.S. Trustee HANDBOOK, ch.7 page 4–14.

**15.** As to rebutting the presumption, in another recent case, the BAP notes that it is conceivable that all net estate funds might be permitted to be applied to fees where a meaningful benefit other than payment accrues to creditors. *Galloway v. Ford (In re Galloway)*, 2014 WL 4212621, at *9, n. 11 (order approving settlement that would pay only trustee and trustee's counsel vacated for better justification).

ted by facts suggesting that there was a substantial disparity by what was done by the trustee and the value of the trustee's services to the estate.

4

It is appropriate that the Local Rules be amended promptly on the basis of "immediate need" to require fee applications supported by time records and narrative statement of services for chapter 7 trustee fee requests that occur in the circumstances described in this section III–B.

The Rules Enabling Act, 28 U.S.C. §§ 2071–77, provides that all courts established by Act of Congress may make rules for the conduct of their business. 28 U.S.C. § 2071(a). The Bankruptcy Court is created by Act of Congress as a "unit" of the District Court. 28 U.S.C. § 151.

Federal Rule of Civil Procedure 83 governs local rulemaking in the District Court. That rule is incorporated into Federal Rule of Bankruptcy Procedure 9029, which governs local rulemaking in the Bankruptcy Court.

The District Court, acting pursuant to Rule 9029(a)(1), has authorized this Bankruptcy Court to make and amend rules of practice and procedure that are consistent with Acts of Congress and the national rules. Fed. R. Bankr.P. 9029(a)(1); General Order 295, E.D. Cal. (Feb. 23, 1993).

This court has formed a Local Bankruptcy Rules Advisory Committee as required by 28 U.S.C. § 2077(b) to study rules of practice and make recommendations to the court. Although the court respects and relies on the work of the advisory committee, it is the court that determines the rules to propose.

A new or amended rule proposed by the court is ordinarily not to be formally prescribed until after giving appropriate public notice and opportunity for comment. 28 U.S.C. § 2071(b).

However, when a prescribing court determines that there is an "immediate need" for a rule, it is permitted to proceed without public notice and opportunity for comment, so long as it promptly thereafter affords such notice and opportunity for comment. 28 U.S.C. § 2071(e).

Here, there is an "immediate need" for a rule prescribing the circumstances in which chapter 7 trustees must make formal fee applications so that the consideration and approval of their fees will not be unduly delayed.

As the advisory committee is presently completing a study of proposed local rule amendments to recommend to the court that likely will result in the court soon proposing new or amended rules as a package for public comment, the notice required by Judicial Code § 2071(e) may be provided at that time.

V

Turning to the four fee applications at hand, the question is whether trustee fees requested are disproportionate. If there is a material disproportion sufficient to rebut the presumption in favor of the § 330(a)(7) commission, then that will be an "extraordinary" circumstance that opens the door to a downward departure. Likewise, if there is some other significant factor—such as the violation of a "fundamental" principle—that counsels against a full "commission," that also will be an "extraordinary" circumstance.

A

The three fee applications in the individual cases are all made by one, part-time trustee. According to the records of the clerk of court, he received $288,676 for work as chapter 7 trustee from July 2013 through June 2014. This included $53,340 under § 330(b) and $235,336 under

§ 330(a). In addition, he was paid $11,250 for acting as his own attorney (few of this district's 28 trustees are lawyers).

In his private law practice during that period, he filed 49 bankruptcy cases for debtors who paid him in excess of $110,000.

### 1

The fact that this trustee received actual trustee compensation within the past year materially in excess of the $206,102 to which Congress limits chapter 13 trustees implies that the subsidy component embodied in the $288,676 already received has operated to provide full "reasonable" compensation for his no-asset cases. This constitutes an "extraordinary" circumstance for purposes of *Salgado–Nava* and *Rowe.*

This conclusion that the no-asset subsidy has been fully recovered is not affected by the trustee's evidence that waivers of filing fees in 2013 deprived him of $3,540 in § 330(b) $60 fees.[16] The clerk's records indicate that during the same period, 2013, this trustee was paid $53,424.70 in § 330(b) fees. This, combined with the fact that total § 330 compensation for this trustee exceeded the maximum that Congress permits for a chapter 13 trustee, reduces the trustee's plaint to the trivial.

It follows that whether the fees requested are "reasonable" for purposes of § 330(a)(1) will be evaluated on the basis of whether the § 330(a)(7) commission is substantially disproportionate without reference to the need to subsidize undercompensation in no-asset cases or whether some other factor rebuts the presumption in favor of the commission.

### 2

Two of the three fee requests result from "short-sale" "carve-outs" in cases that would otherwise have been no-asset cases. The third was a sale that landed in the trustee's lap.

In *Scoggins,* the "short sale" was for $535,000. The trustee paid real estate commissions of $26,750 and received another $26,750 for the estate. After trustee expenses of $360 and $1,818 to another real estate professional, the trustee wants a § 330(a)(7) "commission" of $16,000 (65 percent of the remainder), leaving $8,572 for priority and general unsecured claims—a 5 percent dividend.

In *Ruelas,* the "short sale" was for $205,000. The trustee paid real estate commissions of $11,400 and received another $15,000 for the estate. After expenses of $306, the trustee wants a § 330(a)(7) "commission" of $9,000 (63 percent of the remainder), leaving $5,784 for priority and general unsecured claims—a 32 percent dividend.

In *Popescu,* the trustee received and accepted an offer to purchase a parcel of property for $665,000. The trustee paid real estate commissions of $39,900 and received another $58,564 for the estate. After trustee expenses of $500 and $1,459 for an accountant, the trustee wants a § 330(a)(7) "commission" of $36,500 (64 percent of the remainder), leaving $20,105 for priority claims which would not be paid in full and nothing for unsecured claims.

### B

The corporate liquidation of Dry–Mix Products Co. was a complex, multi-year affair involving a manufacturer and supplier of concrete and concrete products to the construction industry. It was necessary to market and sell multiple parcels of real estate that presented complex issues incident to the history of their utilization. Heavy transportation equipment and man-

---

**16.** Houseworth Decl., *In re Scoggins,* No. 12– 42158, Dkt. # 59.

ufacturing equipment were sold in a commercially reasonable manner. Accounts receivable were collected. The trustee dealt with employees and shareholders, prosecuted numerous claim objections, and resolved tax issues. The process of liquidation to maximize value in a commercially reasonable manner demanded considerable effort and expertise complicated by the need for a successor trustee when the first died during the case.

This effort produced $1,222,159. Secured and priority claims are paid in full. After paying professional expenses for an attorney and an accountant totaling $18,967, the trustee requests a § 330(a)(7) "commission" of $59,915 (5 percent of the proceeds; to be shared with the decedent's estate of his predecessor), leaving $498,284 for unsecured claims. If the requested fee is awarded in full, unsecured claims will realize a 47 percent dividend.

### C

The easy case for evaluation of a "reasonable" fee under § 330(a) is *Dry–Mix Products*. The trustee, who received § 330 compensation of $162,961 from July 2013 through June 2014 ($44,629 under § 330(b) and $118,332 under § 330(a)), was required to manage a complicated program of liquidation of a wide range of assets in a commercially reasonable manner. This was accomplished with only a modest amount of professional legal and accounting assistance.

The results were good. Secured and priority claims are paid in full. Unsecured claims are in line for a 47 percent dividend based on a distribution to them of $498,284.

Compared with those results, a § 330(a)(7) "commission" of $59,915 is not disproportionate. As the trustee's compensation of $162,961 during the past year does not exceed the $206,102 Congressional limit on chapter 13 trustee "reasonable" compensation, there are no issues calling into question the legitimacy of subsidy of other loss-making cases. The current trustee would realize an hourly compensation rate of $310 for his portion of the fee (the rest going to his deceased predecessor), which compensation is not unreasonably disproportionate.

No other factor suggests that any "extraordinary" circumstances might exist that would warrant a downward departure on fees. The requested fee is. "reasonable" within the meaning of § 330(a) and § 330(a)(1)(A).

Accordingly, the fee request of the *Dry–Mix Products* trustee for a § 330(a)(7) "commission" of $59,915 will be granted.

### D

The fee requests in the individual cases are more difficult.

Each request seeks more than the amount that would remain for distribution to unsecured priority and general claims. Hence, each is presumed not to provide "meaningful" distribution to creditors. The trustee, who has the burden of proof, has not rebutted that presumption. If follows that there is an "extraordinary" circumstance within the meaning of *Salgado–Nava*. The fees are unreasonably disproportionate in the general sense.

It is also noted that a reduction to 50 percent of the amount available to pay trustee fees and unsecured priority and general claims will not lead to unfairly low compensation of the trustee. Based on the number of hours reported by the trustee as attributable to each case, it pencils out to an overall rate of $315 per hour.[17]

---

**17.** *Scoggins*, $13,375, 44.9 hr; *Popescu*, $28, 052.50, 87 hr; *Ruelas*, $7,500, 23.5 hr. $48,

Pursuant to § 330(a)(2), in this "extraordinary" circumstance this court concludes that the requested fees are "unreasonably disproportionate" and reduces the § 330(a)(7) "commission" to the highest amount that is not greater than the amount available for distribution to unsecured priority and general claims: *Scoggins,* $13,375; *Popescu,* $28,052.50; and *Ruelas,* $7,500. This is "reasonable" compensation within the meaning of § 330(a)(1)(A).

*Conclusion*

▇ The effect of § 330(a)(7) requiring that a court "treat" trustee compensation as a "commission" operates to create a rebuttable presumption that the maximum fee provided by § 326(a) is "reasonable" for purposes of § 330 and § 330(a)(1)(A). The court remains entitled, pursuant to § 330(a)(2), to award less than the amount requested. The presumption in favor of the maximum commission is rebutted, among other potential reasons, if the fee is unreasonably disproportionate.

▇ A formal fee application supported by time records and narrative statement of services (in lieu of a short-form application) is required for all trustee fee requests: (1) of $10,000 or more; (2) all cases in which the trustee seeks fees exceeding the amount remaining for unsecured priority and general claims; (3) all cases involving a "carve-out" or "short sale"; (4) all cases where the trustee operates a business; and (5) any case in which the court orders a formal fee application.

▇ The three trustee fees in these consolidated cases that exceed the amounts remaining for creditors are unreasonably disproportionate and, hence, not "reasonable" for purposes of § 330 and § 330(a)(1)(A). They will be reduced so as to equal the amounts that, after payment,

927.50 ÷ 155.4 hr = $314.85/hr.

will remain for distribution to unsecured claims. The trustee fee in the business case is not unreasonably disproportionate and will be awarded in full.

Appropriate orders will issue.

Concurrence by: MICHAEL S. McMANUS, THOMAS C. HOLMAN, W. RICHARD LEE, ROBERT S. BARDWIL, RONALD H. SARGIS, and FREDRICK E. CLEMENT, Bankruptcy Judges.

McMANUS, HOLMAN, LEE, BARDWIL, SARGIS, CLEMENT, Bankruptcy Judges, Concurring.

We CONCUR that this opinion demonstrates that there is an immediate need for a local bankruptcy rule requiring that chapter 7 trustees prepare, file, and notice for hearing fee applications supported by time records and a narrative statement of services in the following circumstances:

(1) All requests seeking $10,000 or more;

(2) All cases in which the trustee seeks fees exceeding the amount remaining for unsecured priority and general claims;

(3) All cases involving a "carve out" or "short sale";

(4) All cases where the trustee operates a business; and

(5) Any case in which the court specifically orders such a fee application.

The rule will be prescribed by separate general order issued pursuant to 28 U.S.C. § 2071(e) to have immediate effect, with notice and opportunity for comment provided promptly thereafter.

The Clerk will hereafter provide the court with quarterly reports identifying total chapter 7 trustee compensation

awards under 11 U.S.C. §§ 330(a) and 330(b) for each chapter 7 trustee.